WITTERS, Receiver, etc., *v.* SOWLES, Ex'r, and others.

(*Circuit Court, D. Vermont.* August 13, 1887.)

1. EXECUTORS—PAYMENT OF LEGACIES—INSUFFICIENCY OF ASSETS—TRANSFER OF BANK STOCK TO RESIDUARY LEGATEE.

An executor representing that he had sufficient assets to pay all legacies, but filing no inventory, obtained a decree that he pay the legacies, and that the residue be paid to the residuary legatee, and afterwards transferred to the residuary legatee, with her assent, certain shares of bank stock belonging to the estate, the dividends on which were afterwards paid to the executor, who was the husband of the residuary legatee. The remaining assets were insufficient to satisfy the legacies. In an action brought to charge the estate with an assessment on the stock, *held,* that the transfer was valid, and passed the title to the residuary legatee.

2. SAME—CONVEYANCE BY EXECUTOR—RESIDUARY LEGATEE.

A conveyance by an executor to the residuary legatee, who is his wife, is good at common law.

3. NATIONAL BANKS—LIABILITY OF SHAREHOLDERS—ESTATE OF SHAREHOLDER—LIABILITY OF LEGATEES AND DEVISEES.

Under Rev. St. U. S. § 5151, rendering shareholders individually responsible for the liabilities of a national bank to the extent of the value of their stock; and section 5152, providing that the estate of a shareholder in the hands of the executor shall be liable in like manner and to the same extent that the testator would be if living,—assets which have been transferred to devisees or legatees cannot be subjected to liabilities of the bank accruing after the transfer.

4. SAME—ASSESSMENT ON STOCK—LIABILITY OF LEGATEE.

On the representations of the executor that he had more than sufficient assets in his hands to satisfy all debts and legacies, he was decreed to pay defendant S. S. her legacy, but neglected to do so until after the failure of the national bank in which the testator was a stockholder, when he delivered property to her trustee in satisfaction of the legacy. *Held,* that under the statutes above quoted, the legatee and her trustee were chargeable with an assessment upon testator's stock to meet the liabilities of the bank accruing before actual delivery to the legatee.

5. SAME—SALE OF STOCK FOR TAXES—TRANSFER ON BOOKS OF BANK.

In 1865, a tax collector assumed to sell 50 shares of testator's bank stock for delinquent taxes, and they were bid in by defendant E. S., but they were never transferred on the books of the bank. E. S. received the dividends until the validity of the tax was adjudged, and afterwards they were received by testator. *Held* that, under the laws of Vermont then in force relating to the enforcement of taxes, no title passed, and that there was no such acquiescence on the part of testator as to make the sale good.

6. SAME—TRANSFER OF STOCK—CONSIDERATION—TITLE.

Where an executor, without consideration, transfers bank stock in trust for his own benefit, and to enable the transferee to become a director of the bank, the title, for the purposes of assessment, remains with the executor.

7. SAME—INSOLVENCY—ASSESSMENT—SET-OFF.

In an action by a receiver of an insolvent bank to charge the estate of a shareholder with an assessment on his shares, the executor claimed, by way of set-off, that property belonging to the estate had been delivered to the bank, upon the understanding that it should be applied on the assessment if the bank should fail. *Held* not a proper subject of set-off, even though the bank examiner assented to the agreement.

8. TAXABLE PROPERTY—SWORN INVENTORIES—DISCLOSURE OF CONTENTS—EVIDENCE.

Under Laws Vt. 1882, No. 2, §§ 26-28, providing for sworn inventories by tax-payers of taxable property, the listers of the town, in an action between a receiver and stockholders of an insolvent national bank, will not be allowed to disclose the contents of such sworn inventory; nor will the town clerk,

having it in custody, be allowed to produce it; but a witness who assisted the tax-payer in making the inventory, and saw its contents, with her permission, before it was taken by the lister, may be examined as to its contents.

9. SAME—RULE IN VERMONT—ENFORCEMENT IN UNITED STATES COURT.

The rule of the Vermont statutes, prohibiting the disclosure by listers, or the production by the town clerks, of the sworn inventories of tax-payers, will be enforced in an action in the United States circuit court for the district of Vermont.

10. NATIONAL BANKS—ASSESSMENT—SUIT TO CHARGE ESTATE—PLEADING.

In a suit in equity, brought by the receiver of a national bank, to charge the assets of the estate of a testator, in the hands of the executor and devisees and legatees, with an assessment on certain shares of the capital stock of the bank, the bill was framed so as to charge defendant M. with the assets in her hands as legatee, with the payment of the assessment on the testator's stock. *Held*, that she could not be charged in this action as owner of the stock.

11. EQUITY—DECREE—CORRECTION BEFORE SIGNATURE OR ENTRY.

Before the decree is entered or signed, the court, at the suggestion of either party, or on its own motion, will correct any error or oversight that may appear in the decision or decretal order.

In Equity.

*Chester W. Witters* and *Guy C. Noble*, for orator.

*Edward A. Sowles* and *Kittredge Haskins*, for Edward A. Sowles and Margaret B. Sowles.

*Edward A. Sowles*, for Susan B. Sowles.

*W. D. Wilson*, for Town of Fairfax.

*Albert P. Cross*, for Town of St. Albans and defendants Atwood.

WHEELER, J.   This bill is brought to charge the assets of the estate of Hiram Bellows, in the hands of the defendant Sowles, as executor, and of the other defendants, as devisees and legatees, with an assessment on 430 shares of the capital stock of the First National Bank of St. Albans, of the par value of $100 each, made by the comptroller of the currency equal to that amount.   At the time of the organization of the bank, in 1864, the testator took 450 of its 1,000 shares, and they were placed to his name on the books of the bank.   In 1865 he refused to pay his taxes, and the collector advertised and assumed to sell 50 shares of this stock, which were bid off by the defendant Sowles and paid for by money of the bank, for which he gave his note.   The collector made no transfer of the stock on the books of the bank, and it stood there the same afterwards as before.   The validity of the tax was in suit between the testator and collector, and was finally decided against the testator in 1869.   *Bellows* v. *Weeks*, 41 Vt. 590.   To about that time Sowles received the dividends; afterwards the testator did.   After the death of the testator, Sowles paid his note given for the stock to the bank.   It is claimed now that Sowles became the real owner of these 50 shares, and that the estate of the testator is not liable for the assessment upon them. The laws of the state for the distraint, keeping, and sale of property for taxes did not, at that time, apply to property of this nature, and the attempted sale by the collector had no effect whatever upon the title. *Barnes* v. *Hall*, 55 Vt. 420.   It is urged, however, that the acquiescence of the testator, shown by permitting Sowles to receive the dividends,

made the sale good. However this might have been if Sowles had continued to receive the dividends after the contest was over, his yielding the right to them, from that time, to the testator, shows with plainness that they both understood that the stock belonged to the testator, and that the receipt of dividends and payment for the stock were to be adjusted on that basis. Sowles has, since the death of the testator, undertaken to transfer more shares as executor than would remain to the testator, without these, which shows the same thing. The real title to these shares appears, therefore, to have been in the testator, as the record title on the books of the bank was, at the time of his death. He died October 18, 1876. At that time he was still the owner of the 450 shares, and they all stood in his name on the books of the bank. He left a will providing for various devises and bequests to the defendants other than Sowles, the executor, and made his wife, Susan B. Bellows, residuary legatee, and appointed the defendant Sowles executor, without requiring additional surety on his bond. Letters testamentary were granted accordingly, with additional surety for the payment of debts, as required by the laws of Vermont in such cases. Rev. Laws, § 2067. Proceedings were taken for ascertaining the debts due from the estate, and the executor satisfied some of the legacies wholly, and others in part, out of the assets of the estate. Ten shares of the stock were transferred by the executor to Oscar A. Burton, and 10 to George W. Foster, in a manner about which no question is now made.

In 1880, Susan B. Bellows died, leaving a will making, so far as is material, the same devises and bequests as were made by the will of Hiram Bellows, except that their adopted daughter, Margaret B. Sowles, wife of Edward A. Sowles, executor of his will, was made residuary legatee in her will; and Edward A. Sowles was appointed executor of her will, with the same provision that additional surety should not be required on his bond, and that he should not be required to file any inventory of her estate. Letters testamentary were granted to him upon her estate accordingly, with additional surety upon his bond for the payment of debts, of which, however, there appears to have been none.

Prior to or on March 11, 1881, Sowles, as executor of each of the wills, appears to have applied to the probate court having jurisdiction for an order for the settlement of his accounts, and for decrees of distribution under each will, whereupon notice was ordered to be given for that purpose, as required by law for such settlement and decrees, on the twenty-sixth of the same month, and notice having been given the hearing was continued to the thirtieth. On that day Margaret B. Sowles made an application in writing to that court, signed by her as residuary legatee, wherein she requested the court to "decree the amount of real and personal estate named in Hiram Bellows' will to E. A. Sowles, executor therein named, according to the terms of said will, without finding any definite amount in said executor's hands," and "to decree to the undersigned all the residuary portion of real and personal property named in Susan B. Bellows' will, or owned by her, without finding any definite amount in E. A. Sowles', executor's, hands, without any inven-

tory or specification of items, or articles or estate," and added, "and I accept the same without further specification, and exonerate said E. A. Sowles, as executor, named in said wills, from further duty or liability in the premises." And the court made decree in the case of Hiram Bellows' estate, reciting the notice and continuance, and the appearance of Sowles, executor, and representation by him that he had paid, and had in his hands sufficient funds and estate to pay, all the legacies, leaving to be decreed to the residuary legatee both real and personal estate, and that after paying the bequests, naming them particularly, the residue was devised and bequeathed to Susan B. Bellows, who had deceased, and of whose will Edward A. Sowles was executor, and that Sowles, as executor of her will, had requested the court to decree the residue to him, as such, without an inventory or specific amount found; and that the court found from the evidence that the testator, Hiram Bellows, died seized of estate sufficient to pay all the debts and legacies, and leave a large amount of real and personal estate to be decreed to the residuary legatee; that he pay to each of the legatees named in the will the sum bequeathed in the manner specified, and that the real and personal estate therein devised to each was thereby decreed and assigned to each as in the will provided; and that the remainder, after paying the legacies, was thereby decreed to the estate of Susan B. Bellows, residuary legatee, of whose will Sowles was executor. And after similar recitals respecting the estate of Susan B. Bellows, naming the bequests, and reciting the application, in substance, of Margaret B. Sowles, the court decreed that the executor pay all the legacies, and decreed the residue to her. No appeal was taken from these decrees, and on the next day after they were passed, Edward A. Sowles, as executor of the will of Hiram Bellows, transferred to Margaret B. Sowles, on the books of the bank, in accordance with the by-laws of the bank, 400 shares of this stock, and that number of shares was credited to her on the stock ledger of the bank, and charged to the stock account of Hiram Bellows. These 400 shares stood in her name on the books of the bank until its failure April 7, 1884.

The bill alleges, as to these 400 shares, referring to this transfer previously therein set out, that such pretended transfer was made before the conditions of the decree had been complied with, by paying the legatees the several sums bequeathed to them, of which sums the amount of about $40,000 remained unpaid, with less than $30,000 of property in the hands of the executor, aside from this bank stock, from which to pay this balance; that she had no knowledge of the transfer until a long time after it was attempted to be made, and after the bank became insolvent; that she never accepted or assented to the transfer, nor received any certificate of the stock, or dividends thereon.

The answers of the executor, and of Margaret B. Sowles, who is made a defendant on account of the receipt of assets, admit these allegations, and she affirms their truth. The answers of the other defendants deny them. That the executor had not assets in his hands, aside from this bank stock, sufficient to pay the balance of the legacies, at the time of

the transfer, sufficiently appears.    On the question whether Margaret B. Sowles knew of the transfer of the stock to her, and accepted it or assented to it, the other defendants, or some of them, took the testimony of the listers of the town, to whom tax-payers are required to return a sworn inventory of their taxable property, as to the contents of her inventories, with reference to whether this stock was therein set down by her as her taxable property after the transfer, and called upon the town clerk having custody of some of these inventories to produce them.    Motion was made to suppress this testimony, and the offer to have the town clerk required to produce the inventories was objected to.    The laws of the state provide that these inventories, after they are made by the tax-payers, shall be taken up by the listers, and on or before a certain day be lodged in the town clerk's office, and there kept three years; that the town clerk shall allow certain prosecuting officers, the listers and selectmen, and the tax-payers their own, and no others, to examine them; that they shall be produced in court, by the town clerk, on subpœna; and that their contents shall not be disclosed by any person having access to them, except as set forth, and in the event of prosecution for breach of the provisions of that act.    Laws 1882, No. 2, §§ 26–28.

By section 858, Rev. St. U. S., the laws of the state are made the rules of decision in the courts of the United States as to the competency of witnesses, except in some respects not material.    This provision requires this court to enforce that part of the statute of the state prohibiting disclosure.    *Insurance Co.* v. *Trust Co.*, 112 U. S. 250, 5 Sup. Ct. Rep. 119. The provision of that statute, as to production of the inventories in court on subpœna, applies to production on prosecutions under that act, as all other disclosure is prohibited.    The listers should not be required or allowed to testify to their contents, nor the town clerk be required to produce them, except in such prosecutions.    The motion to suppress is therefore granted, and that testimony not read, and the offer of production excluded.

The testimony of a witness who assisted her in making one of the inventories, and saw its contents by her permission before it was taken up by the listers, was examined as to what they were.    Motion was made to suppress this.    The state law imposes the obligation of secrecy only after the inventories are taken up by the listers, and has no application to exhibitions of them by the tax-payers before.    This testimony is in the nature of proof of declarations and written statements by her, bearing upon her testimony when she testifies that she did not know that the stock was transferred to her.    The motion to suppress is denied as to this, and the testimony read and considered.    It shows that this stock was put into her inventory as made by her.    The grand lists, on which taxes are made out, are open and public, and are in evidence.    They show that this stock ceased to be set to the executor at the time of the transfer, and was set to her afterwards, and taxes assessed upon it were paid by or for her.    Hiram Bellows was president of the bank, while he lived, after it was organized; she was the only child and resided in the same village.    She must have known of the stock, and have known that

a large part of the estate, which included that, was coming to her. She did not receive any certificate of the stock, and the dividends were paid to her husband by being credited to him in his bank account. This latter circumstance is not very strong as showing that she knew of the transfer, for they would probably have been credited in the same manner if the transfer had not been made. Taking all the circumstances together, it does not seem reasonable to suppose that she did not expect that this stock, which was then worth considerably more than its par value, would come to her with the residue that she asked for. She did not repudiate it; her husband was, by the common law, which had not been changed in this state, entitled to the dividends, and had them. The conclusion that there was no want of knowledge and assent on her part, necessary to the validity of the transfer, is irresistible.

The orator insists, however, that the decrees were so unlawful and irregular as to furnish no foundation for the transfer; and that the transfer, without them, and without consideration, was inoperative to divest the executor of the stock. There is no question here between legatees and devisees about this stock, nor between any such and the creditors of the estate. Hiram Bellows had been dead several years, about seven, before the debts of the bank, for the payment of which this assessment is wanted, were contracted. These assets are therefore only liable for this assessment by virtue of section 5152, which provides that executors shall not be personally holden, but the estates and funds in their hands shall be liable in like manner as the testator would be if living. The question is whether this stock was in the hands of the executor, within the meaning of this statute, at the time of the failure. The legatees had no title or right to the property, except under the will. By the terms of the will, and the law of the state, they had only the responsibility of the executor for security. The creditors could not be defeated in their rights, but they were provided for, as the laws of the state required, by a bond with such sureties, and to such an amount, as the probate court should require. Rev. Laws, § 2067. The highest court of the state, whose construction of these proceedings is binding, has held in respect to this very decree that, in an action by one of the unpaid legatees for the legacy, the question whether debts and expenses had been paid was not a proper subject of inquiry, but was *res adjudicata*, and that the decree laid a foundation for the recovery of the legacy. *Weeks* v. *Sowles*, 58 Vt. 696, 6 Atl. Rep. 603. The executor took the risk of having assets sufficient for all when he represented and showed to the court that he had them. This showing gave the court jurisdiction to decide that he had them. He elected to treat this stock as a part of the residuum; whether it was or not, is not now open. It is suggested that no inventory had been filed, as directed by the statute, and that there was no property before the court for the decree to operate upon. An inventory does not appear to be necessary to bring the assets of a deceased person within the jurisdiction of the probate court for administration. If none is filed, the court may proceed to ascertain and decree the assets on proof, as was done, on notice to all, and proof to the satisfaction of the court furnished by the executor.

*Holmes* v. *Bridgman*, 37 Vt. 28; *Weeks* v. *Sowles*, 58 Vt. 696, 6 Atl. Rep. 603. The decree did not separate this stock from the rest of the assets, but it settled conclusively the rights of all others to the estate, as between them and the executor, and left him with control of the whole, without liability to further account, or otherwise than on his bond. His election to treat this stock as a part of the residue therefore made it such, when carried out.

The relation of husband and wife between the executor and residuary legatee is put forward as preventing the validity of the transfer, to change this stock from his hands to hers. They are one person in law, as by the common law, in this state, for most purposes, and a sale by him to her of his own property would be of no validity, both on that account and by reason of her disability to make contracts. But this was not a sale of the stock to her, and involved the making of no contract. He did not own the stock, and did not transfer it as his own, but as of the testator, by virtue of the authority given by the will to him as executor. As early as A. D. 1495, it was adjudged that a *feme covert* executrix could make sale of lands to her husband, and it was a good bargain. Year Book 10 Hen. VII. 20; Brooke, Abr. "Executors," 175. And in Coke upon Littleton it is laid down that, if a *cestui que use* had devised that his wife should sell his land, and made her executrix, and died, and she took another husband, she might sell the land to her husband, for she did it *en autre droit*, and her husband should be in by the devisor. 112*a*, Hargrove's Notes, 143; *Newis* v. *Lark*, 2 Plow. 414. This appears to be good law now. *Gridley* v. *Wynant*, 23 How. 500; *Gridley* v. *Westbrook*, Id. 503. The reasons are equally strong why a conveyance by a husband executor to his wife should be good. The executor separated this stock from the rest of the estate in his hands, and made it a part of the residue by the transfer, which was a mere delivery, and it became hers by title from the testator. From that time it appears to have ceased to be in his hands as executor, and was in hers as legatee.

On the fifth day of September, 1882, the executor transferred 10 shares of the stock to Behnett C. Hall. The bill alleges that this transfer was without consideration, and in mere trust for the benefit of the executor, and for the purpose of enabling Hall to become a director. The answer of the executor, in substance, admits this, and there is in reality no question made but that the allegations are true. These 10 shares, upon these facts, remained in the hands of the executor, for the purposes of this assessment. *Bank* v. *Case*, 99 U. S. 628; *Witters* v. *Sowles*, 25 Fed. Rep. 168. These considerations leave 30 shares in the hands of the executor subject to the assessment, and for which the "estates and funds," in his hands are liable. Rev. St. § 5152. The assessment amounts to $3,000, with interest from September 10, 1884, the time at which it became due.

The receiver claims that the assets of the estate which have been paid, delivered, or otherwise have gone to the devisees or legatees, in satisfaction of their legacies and devises, are still liable for this assessment, and that they are chargeable for the amount received up to the amount of

the assessment. The devisees and legatees who have received the assets insist that only those which were left in the hands of the executor are liable. The shareholders are liable only by force of the statute, which declares that they shall be held individually responsible for all contracts, debts, and engagements of the bank, to the extent of the par value of their stock. Rev. St. § 5151. The liability of the shareholder attaches when the contracts are made, debts are created, or engagements are entered into, by the bank, and it is an original liability, made by the law a part of them. *Hobart* v. *Johnson*, 19 Blatchf. 359, 8 Fed. Rep. 493; *Richmond* v. *Irons*, 121 U. S. 27, 7 Sup. Ct. Rep. 788. The testator did not become liable on account of the stock, except for such debts, contracts, and engagements as the bank became liable for during his lifetime. The ownership of the stock would not of itself create any, not even a contingent, liability; but ownership of the stock, and creation of a liability by the bank, together, would create a liability of the shareholder contingent upon the discharge by the bank of its liability. Both are necessary to the creation of a contingent claim against a shareholder or his estate. If such a claim had arisen against the estate, it could be enforced against the legatees and devisees to the extent to which they have received assets; not by bringing the assets back into the hands of the executor, but by proceeding directly against those who have received them. Rev. Laws, §§ 2209, 2211, 2214. None of the liabilities of the bank to meet which this assessment is made, are shown or claimed to have been incurred during the life of the testator. Therefore this is not a contingent claim for which the assets can be pursued under the laws of the state relating to such claims. The statute of the United States provides that an executor shall not be personally subject to any liability as a stockholder, but that the estate and funds in his hands shall be liable in like manner, and to the same extent, that the testator would be if living. Rev. St. § 5152. So far as appears or is claimed, all the assets of the estate in the hands of those sought to be charged for them were received before any of the liabilities of the bank now in question were created, and most of them several years before. If the testator had lived, and had disposed of his property as it had been disposed of under his will, he would have been personally liable to this assessment, but none of this property could have been reached to satisfy it. The meaning of this statute seems to be that such estates and funds as an executor or administrator has in his hands, at the time when the liability attaches, are liable in like manner as the testator would be if living at that time, and having in his hands the stock and other property, as the executor had it in his hands; and not that they are holden as the testator would have been if the liability had attached in his life-time. This case is very different in this respect from *Davis* v. *Weed*, 44 Conn. 369. There the liability attached before letters testamentary were granted, if not before the death of the testator, and therefore it was impressed upon all the assets, and would follow them into the hands of the devisees and legatees everywhere. And it is understood that there the executor or administrator can recall property from heirs, devisees, or legatees, if necessary to meet a

liability of the estate arising or appearing after distribution. Therefore the assets were followed and reached, in that case, through the administrator. But that does not show that these assets can be reached through the executor, and are therefore in any sense in his hands so as to be liable to the assessment. The statute appears to contemplate the stockholders as they are at the time of the incurring of the liability, and to hold them responsible equally and ratably, and not one for another, as they stood then. Rev. St. § 5151; *U. S.* v. *Knox*, 102 U. S. 422. Each stands by himself as he is at that time, solvent or insolvent; and, if he is an executor or administrator, the estate then in his hands, adequate or inadequate, and that only, is holden. When these devisees and legatees received their shares of the estate of the testator, the bank was apparently, and, in fact, so far as is shown or claimed, amply solvent, and there was nothing in that direction then to prevent them from taking a clear title, and the law does not appear to be such as to make what happened afterwards, in which they had no part, disturb their title. The orator has therefore no claim for relief against these devisees and legatees, and the bill must be dismissed as to them.

The executor appears to have delivered to the bank, while its failure was impending, stocks and securities belonging to the estate, to an amount much larger than the amount of these shares, which were disposed of by the bank in payment and security of claims against it. He sets up in his answer that this was done upon an understanding that the property should be restored by the bank, if it survived, and applied on an assessment, if it failed, and one should be made. And he now claims that so much of this property or its proceeds as is necessary should be applied upon this assessment, and bar further recovery. He claims, upon the evidence, that this understanding was had, with the bank examiner as well as with the officers of the bank. This assessment is for the purpose of paying those who were creditors of the bank at the time of its failure. That property went to pay others not creditors at the time of the failure, so far as it did pay them. The delivery of the property may have created a liability of the bank; if so, the assessment upon this and the rest of the stock would go ratably upon that and the other liabilities if proved and established. A set-off cannot be made without depriving others of their ratable proportion. Besides this, the claims are not in any sense mutual. The claim of the executor, if he has any, is against the bank. The assessment never was due to the bank, and does not belong to it. The assessment belongs to the creditors of the bank, and is recoverable by the receiver, only for the purpose of ratable distribution among them. *Delano* v. *Butler*, 118 U. S. 634, 7 Sup. Ct. Rep. 39. This claim is therefore no answer to the claim for the assessment, whether this understanding was had or not, or with the bank examiner or only with others. There was no receiver, and the examiner did not, and probably did not assume to, represent the creditors.

The bill is not framed to charge Margaret B. Sowles with the assessment as owner of the stock, but only to charge the assets in her hands as legatee; and it is said by Mr. Justice SWAYNE, in *Kennedy* v. *Gibson*,

8 Wall. 498, in the opinion of the court respecting such assessments: "Where the whole amount is to be recovered, the remedy must be at law." The bill must be dismissed as to her, but without prejudice to the right to recover against her as holder of the stock. As she has not been joined in her defense by next friend, but only with her husband, who is held chargeable in another capacity, the dismissal must be without costs to her.

Let there be a decree for the orator against the defendant Edward A. Sowles, that he pay to the orator, out of the assets of the estate of Hiram Bellows in his hands, the sum of $3,000, with interest from September 10, 1884, to the time of entering the decree, together with the costs of this suit, within 10 days from the entry of the decree; and that in default of such payment execution against such assets issue; and dismissing the bill as to Margaret B. Sowles, without costs and without prejudice, and as to the other defendants, with costs.

---

(August 24, 1887.)

On rehearing the following opinion was delivered:

WHEELER, J. Since the filing of the decision and decretal order in this cause, and before entry or signature of any decree pursuant thereto, on motion of the orator, further hearing has been had as to charging the assets of the estate of Hiram Bellows, which have passed to Margaret B. Sowles, trustee of Susan B. Sowles, with the assessment upon 30 shares of stock of the national bank, of which the orator is receiver, still held by the executor. At this stage of the case correction of any oversight or error can be made on suggestion of any party, or by the court of its own motion. Such correction is not the alteration of a decree, for as yet there is no decree; but is a mere change of the directions for a decree, if necessary, which may always be done until the directions, as finally settled, are carried into the decree itself and the decree is entered.

On re-examination of the case on this point, which was not made on the argument in chief, it fully appears that, at the time of the creation of the debts of the bank, on account of which this assessment is made necessary, there were estates and funds in the hands of the executor, which were of the testator, to an amount several times greater than this assessment upon this stock. It is said in argument that the title to these assets had before that time vested in the legatees under the decrees of distribution. None of these assets were specifically bequeathed or distributed to the legatee. A legacy of $25,000 was bequeathed to her by the testator. The decrees were made on representations by the executor that he had more than sufficient assets in his hands to satisfy all debts, legacies, and charges. Thereupon he was decreed to pay this legacy. He had not done so at the time of the failure of the bank, which, of course, was after the accruing of these liabilities of the bank. He has since assumed to pay it out of these assets by delivering them to the trustee at agreed prices, in satisfaction of the legacy. The statutes of

the United States provide that the estates and funds in the hands of an executor shall be holden as the testator would have been holden. This statute fixed the lien upon these assets, and it would follow them, wherever they should go, in any subsequent division or distribution of them. The delivery of them by the executor subsequent to this did not remove them away from the lien, but left them in the hands of the trustee of the legatee, or in the hands of the legatee, if they had reached her, subject to the lien as before. The statutes of the state make heirs, devisees, and legatees, who have received assets of an estate, liable for debts,—chargeable for the debts,—to the extent of the assets received. Rev. Laws Vt. § 2209. This is not a debt of the testator, but is a liability of the estates, and funds in the hands of the executor, which attaches to them in the same manner that a debt of the testator would if contracted when he had the same assets. They may be followed, therefore, in the same manner. It is said that some of these assets are real estate, and that such estate goes to the residuary, and not to the pecuniary, legatee, or the executor. But the statutes of the state leave real estate in the hands of the executor, if needed to pay debts or legacies, (Rev. Laws, § 2137;) and the statutes of the United States make no distinction in the kinds of estates and funds which are left in his hands, but make all that are left liable. Rev. St. U. S. § 5152. If this was not so, a large part of the assets so delivered by the executor were strictly personalty, and a still larger part redeemable leases reserving annual rent, which are in the nature of mortgages, and go to the executor, and not to the heir. It is not disputable, and conceded, that the amount of the latter is greater than this liability. The legatee and trustee are chargeable, therefore, with the amount of this assessment.

So much of the decretal order heretofore entered herein as directs that the bill be dismissed as to Susan B. Sowles, and Margaret B. Sowles, trustee for her, is hereby vacated. And there is added thereto that the decree provide that in default of payment by the defendant Edward A. Sowles, executor, payment be made by the defendant, Susan B. Sowles, or Margaret B. Sowles, her trustee, within 10 days thereafter; and, in default of such payment, that execution issue against the assets of the estate of Hiram Bellows, in the hands of Edward A. Sowles, executor; and for want thereof against such assets in the hands of Margaret B. Sowles, trustee of Susan B. Sowles; and for want thereof against the goods, chattels, and estate of Susan B. Sowles, in her own hands, or in the hands of Margaret B. Sowles, trustee.