**VAUGHAN et al. v. GARDNER–DENVER CO.**

No. 723.

District Court, D. Delaware.

April 21, 1930.

Charles F. Curley, of Wilmington, Del., and George F. Scull and Chester A. Adee, both of New York City, for plaintiffs.

Charles Neave, of New York City, B. G. Foster, of Washington, D. C., and Marvel, Morford & Ward, of Wilmington, Del., for defendant.

MORRIS, District Judge.

In this patent infringement suit in equity by Fanny Minton Vaughan and Ingersoll-Rand Company against Gardner-Denver Company upon claims 1, 2, and 3 of patent No. 1,147,660, issued July 20, 1915, for a "Ballast-Tamper for Railway-Ties," spoken of by the art as a "Tie-Tamper," the only defense is invalidity, and that defense is based mainly upon British patents Nos. 3653 and 4674 of 1903 to Collet.

The tamper of the patent in suit is a mechanical appliance having a housing or casing within which is a reciprocatory impact member adapted to deliver effective blows at a high rate of speed by, for example, pneumatic pressure upon the end of a tamping bar held by the lower end of the housing. The escape of the bar is prevented by a collar or enlargement which is confined in a space in the housing long enough to permit the bar to have a limited longitudinal movement. During the tamping operation, the bar rests upon the ballast and the weight of the casing rests upon the collar of the tamping bar. At the end of the housing opposite the tamping bar is a handle extension having one handle at its extremity and another near but well out of alignment with the housing. The tamper is adapted to be retained manually and without mechanical supports in a tamping position and when lifted by the lower handle it assumes an inclined position substantially corresponding to the normal tamping angle of the implement.

Though prior to Vaughan's invention many efforts had been made to provide a practically useful power-operated tamper, these efforts had not been successful. When Vaughan made his invention, the tamping of ballast under railway ties was still being

done almost without exception by the manually operated tamping bar, pick, or shovel. The use of the Vaughan tamper began in 1914. It has become wide spread. In 1928 the defendant began making a tamper that in structure and function is a duplicate of the Vaughan tamper. It is of this that the plaintiffs complain.

Collet obtained an American patent No. 715,552, issued December 9, 1902, as well as the two British patents of 1903 here relied upon by the defendant. In the American patent no provision was made to limit the sliding or longitudinal movement of the tamper bar. Consequently, if the weight of the implement were permitted to rest upon the tamper bar during the tamping operation, the casing would slip down over the tamper bar until the upper end of the bar came into contact with the hammer. Under such conditions, the reciprocatory movement of the hammer, instead of delivering blows upon the upper end of the bar, would bring about a useless reciprocation of the housing. Since it is obvious that the weight of a power-operated tamper could not be long supported by a workman, it is likewise obvious that, if practical at all, the implement of Collet's American patent was one requiring mechanical support. In his specification and in his arguments in the Patent Office Vaughan could and did readily distinguish his tamper from that of the American patent to Collet. The defendant now shows, however, that Collet's British patents Nos. 3653 and 4674 of 1903 were not cited by the Patent Office during the pendency of the Vaughan application, and that each of these patents discloses a tamper having a bar of limited longitudinal movement and, hence, a tamper whose weight may rest on the bar during the tamping operation and so one that could be held manually without mechanical supports during the tamping operation. The tamper of the earlier of these patents was without handles, but the later one was provided with a guiding handle near its upper end. The defendant urges, however, that the placing of handles upon implements of every kind to facilitate transportation and to give them "hang" or "balance" was old and obvious in every art. Consequently, it contends that the tampers of the British patents were complete anticipations of the Vaughan tamper. But it does not follow that, because a common difference exists between these three tampers— the Vaughan and the two British tampers— and the tamper of Collet's American patent, the three tampers are the same in a patent sense. Other differences of a distinguishing

character may exist between the British devices and that of Vaughan, notwithstanding their substantial identity in one particular.

Are there such differences? To answer this inquiry the three tampers must be more closely scrutinized. The best view of the Vaughan tamper is had from the claims when read in the light of the specification. Claim 1, which may be considered representative, delineates, "A ballast tamper for railway ties *adapted to be held manually without mechanical supports,* embodying a casing provided with an internal reciprocating impact member, a tamper bar held by the casing in position to receive the blows of the impact member and having a slight longitudinal bodily movement relatively less than the movement of the impact element, *a handle extension at the opposite end of the casing from the bar and two handles, one at the extremity of the extension and the other in proximity to the casing in position to cause the tamper to assume the proper angle for tamping when suspended therefrom, whereby the tool may be positioned with the least effort on the part of the operator.*" (Italics mine.)

Concededly the Collet British tampers meet all the requirements of the nonitalicized parts of the Vaughan claim. Hence, the differences, if any, between the British tampers and that of Vaughan must be found in the features or elements called for by the italicized portions of the claim or in the functions, mode of operation, or results that are consequent upon the putting of such elements into combination with the elements which the Vaughan tamper and the British tampers concededly have in common. To understand the italicized parts of the claim and the results which follow the inclusion of those elements in the combination, the specification must be looked into. But, while examining the specification, it must be remembered that though a mechanical construction which will permit the weight of the implement to be supported by the tamper bar during the tamping operation is indispensable to a tamper that is "to be held manually without mechanical supports," such construction is not the only sine qua non of a practicable tamper that is to be so held. Manifestly, size, weight, distribution of weight, balance, and ease of positioning and repositioning the tamper, which must be moved hundreds of times during a day, all enter crucially into the construction of such a tamper. Vaughan was cognizant of this fact. In the paragraph beginning at the bottom of page 2 of his patent he said: "At its opposite end from the tam-

per bar, the housing is provided with an elongated stock "G" which projects preferably in axial alinement with the housing and rigidly attached thereto or formed as an integral part thereof, although it is of light weight and may be conveniently a hollow or pipe extension which is of sufficient length to enable the handles to be presently described to be located far enough above the housing to enable the operator to stand in a substantially upright position and to hold the tamper in an inclined position with the major weight located well below the handles and in proximity to the support afforded by the end of the tamping bar when in operation. In the preferred arrangement the upper end of the stock is provided with a spade handle H adjustable angularly thereon by means of a clamp connection h and with a second handle I also adjustably clamped on the stock by a clamp connection i, whereby it may be adjusted both angularly and longitudinally. The handle I is provided with a hand piece I' adapted to be grasped in the hand and located preferably off at one side of the stock or well out of alinement with the stock and housing. This hand piece I' is adjusted or positioned in such relation to the housing that should the whole tamper be suspended therefrom it will hang in an inclined position which substantially corresponds to the angle at which the implement is normally intended to work. Thus, a workman grasping the hand piece I' and supporting the tool thereby finds that it normally and naturally occupies a position in which it should be applied to the ballast for tamping purposes, and should any change in the angle be necessary, the two handles afford widely separated grips which will enable the workman to vary the angle with the least possible muscular effort. The center of gravity of the whole implement is located below the lower handle, and the major weight is therefore down close to the ground, where it will not be felt by the workman, except at such times as he finds it necessary to lift the end of the tamping bar out of contact with the ballast for changing its position or for admitting more ballast in front of the tamping end."

On page 1, Vaughan says that the body portion or housing of his tamper, though necessarily of some considerable weight, is "made as light as possible."

Vaughan gives his size or over all length of his tamper by stating explicitly that the handles, which are upon its stock or upper end, are to be so located as to enable the operator to stand in a substantially upright position. This length has been found to be approximately 44 inches. His disclosure that it is to be made as light as possible is adequate with regard to weight. His distribution of weight is made clear by his instruction that the major weight is well below the handles and in proximity to the support afforded at the end of the tamper bar—"down close to the ground"—and by the further instruction that the center of gravity of the whole implement is to be below the lower handle. Ease of handling is revealed by the statements with regard to size, weight, distribution of weight, and the respective positions of the two handles.

Collet made no similar disclosure. Apparently he gave no thought or consideration to size, weight, distribution of weight, balance, or ease of positioning and repositioning his tamper. Indeed, he did not have to deal particularly with these matters if his British tampers were to be mechanically supported. His specification does not even set out that the British tampers were to be held manually without mechanical supports as it undoubtedly would, had it been intended by Collet that his British tampers should depart thus radically from his American tamper. His American tamper required mechanical supports and the drawings of the British patents are substantially the same as the drawings in his American patent. But, closing its eyes to the well-established principle that patent drawings are not necessarily working drawings or made on an operative scale, Robinson on Patents, § 543, and starting with the arbitrary assumption that the over all length of the Collet implement was 47 inches and that the patent drawings were drawn to scale, the defendant caused a housing of the Collet British tamper to be made in conformity with the drawings so interpreted and to be produced in evidence. The defendant points out that the center of gravity of this housing is slightly below the bulge inclosing the cam; that the juncture of this bulge with the main part of the housing constitutes a natural and convenient handhold or lower handle; and that the weight is not greatly different from that of the Vaughan implement. But it seems to me that this exhibit is of no benefit to the defendant, for the diameter of the tamper bar made for the housing as exhibited by defendant would be only .43 of an inch, and the evidence makes it certain that a bar that will operate without breaking frequently must have a minimum diameter of one inch. The evidence likewise makes it certain that, if defendant had based

its construction of the exhibit upon that fact, instead of the arbitrary assumption that the length of the instrument was 47 inches, and had then assumed that the drawings of the British patents were made to scale, defendant's exhibit would have been at least 100 inches in length and would weigh 200 pounds.

It follows that even when the Collet British patents are examined with the advantage of the after acquired knowledge supplied by Vaughan, it cannot be definitely said that the tampers therein described meet the fundamental requirement of the Vaughan claim "adapted to be held manually without mechanical supports." Such want of certainty is in itself sufficient to constitute a denial that the British tampers are anticipations of the Vaughan claims. Atlantic, Gulf & Pacific Co. v. Wood (C. C. A. 5) 288 F. 148; Cimiotti Unhairing Co. v. Comstock Unhairing Co. (C. C.) 115 F. 524; Badische Anilin & Soda Fabrik v. Kalle (C. C.) 94 F. 163.

But it is certain that Collet's British tampers differed from those of Vaughan in not having their operating mechanism and major weight "down close to the ground"; in not having a handle extension, light in weight, affixed to the upper end of the housing by means of which, functioning as a lever, the tamper could without noticeable effort be manually held in and moved through the tamping arc or range; and in not having a handle "in position to cause the tamper to assume the proper angle for tamping when suspended therefrom." The Collet tampers likewise differed from those of Vaughan in that they did not go into use.

It is equally certain, I think, that Vaughan reconstructed the Collet tamper by making it of different size and weight, by placing the operating mechanism and major weight close to the ground, and by adding a new element—the elongated stock provided with a spade handle at its end and a lower second handle "in position to cause the tamper to assume the proper angle for tamping when suspended therefrom," and that in so doing he made a novel combination of coacting elements that accounts for and explains the utility and commercial success of the Vaughan tamper in contrast with the nonsuccess of prior power-operated tampers. Such reconstruction also involved invention. Toledo Computing Scale Co. v. Computing Scale Co. (C. C. A. 7) 208 F. 410; Ide v. Trorlicht, Duncker & Renard Carpet Co. (C. C. A. 8) 115 F. 137.

The plaintiffs must have the decree they seek.