## JACK v. FORREST.
### No. 944.

Circuit Court of Appeals, Tenth Circuit.
June 7, 1934.

LEWIS, Circuit Judge, dissenting.

———◆———

Samuel W. Hayes, of Oklahoma City, Okl. (Will L. Hoyt, of Nephi, Utah, on the brief), for appellant.

Claude F. Baker, of Eureka, Utah, for appellee.

Before LEWIS and BRATTON, Circuit Judges, and KENNEDY, District Judge.

BRATTON, Circuit Judge.

Henry Forrest died testate in 1917. At that time he owned six shares of stock in Nephi National Bank of Nephi, Utah. They were issued and registered in his name and remained thus registered throughout the time referred to herein. They stood in his name at the time this suit was instituted. By will he bequeathed $1,000 to a niece and devised the remainder of his property as follows:

"All the rest, residue and remainder of all real and personal property, of any and every kind and nature whatever, owned by me at the time of my death, after satisfying the above named directions and bequest, I give, devise and bequeath to my beloved wife Rhoda Forrest, for her sole use, behoof and benefit, in her support and maintenance for and during her natural life; and should my said wife leave, at the time of her death, any of said property, either real or personal, then I give, devise and bequeath all the rest, residue and remainder of all such property, real and personal of any and every kind and nature, to my beloved son Ernest R. Forrest and my beloved daughter Lucile Hawkins, to be equally divided between them, share and share alike."

The estate, excluding the stock, consisted of real and personal property of the approximate net value of $10,000. Ernest R. Forrest—son of decedent and defendant herein—was appointed and qualified as administrator with the will annexed in March, 1918, and thereupon took possession of the property. During the administration proceedings, he and his sister transferred their right, title, and interest as remaindermen to their mother. On March 11, 1920, the court, having jurisdiction of the estate, entered a decree reciting that all claims, accounts, and taxes had been paid; that Ernest Forrest and Lucile Hawkins, heirs at law, had conveyed their interests to Rhoda Forrest, the remaining heir; that Rhoda Forrest thereupon became and was the sole owner of the property constituting the estate and directing that it be distributed to her. Defendant here, as administrator in that proceeding, thereupon delivered all of such property, including the stock, to his mother. He did not see the stock again until after she died in July, 1931. He then found it among her effects. About a month after the distribution had been made and while the administration proceedings were still pending, Rhoda Forrest conveyed by separate deeds to defendant and his sister certain parcels of land theretofore belonging to the estate, each deed reciting "this

property comes to the grantee as an heir-at-law of Henry Forrest, deceased." Defendant paid no consideration for the real estate which he thus acquired. He still owns it and it exceeds $2,000 in value. On November 18, 1931, defendant filed a petition for his discharge as administrator. It was granted and the estate closed on December 4, 1931.

The Nephi National Bank became insolvent and suspended business on December 1, 1931—prior to the date on which the administration proceedings were closed and the administrator discharged. On March 8, 1932, the comptroller of the currency laid an assessment against the stockholders of $100 for each share. That assessment, so far as it related to the stock in question, was not paid. The receiver of the bank thereafter instituted this action at law, pleading the facts in detail. It was alleged among other things that the duty rested upon defendant, while acting as administrator, to reserve sufficient of the assets of the estate to disharge the liability which might accrue through assessment, or to transfer the stock to a solvent distributee; that he did neither; that he acquired without consideration and now owns real estate formerly belonging to the estate exceeding in value the amount of the assessment in question. Personal judgment for $600 was sought.

After interposing certain admissions and denials, defendant pleaded in his answer that the stock had belonged to his mother since March 11, 1920; that he distributed it to her in obedience to the decree of the court having jurisdiction of the estate; that the bank had knowledge of such facts; and that on November 18, 1931, he delivered the stock to the bank, taking a receipt for it reciting that it was to be held in trust for the estate of his mother.

Trial by jury having been waived, the case was tried to the court. Judgment was rendered for defendant. Plaintiff appealed.

■ Defendant presented a motion to dismiss the appeal on two grounds: First, that trial by jury was not waived in writing, and, second, that plaintiff failed at the close of the evidence to request special findings of facts. The judgment recites that the parties stipulated in open court to waive trial by jury. Since the amendment of May 29, 1930, written waiver is unnecessary. 28 USCA § 773. The recitation in the judgment that a jury was waived sufficed. United States v. Perry (C. C. A.) 55 F.(2d) 819. The trial court in an action at law is not required to make special findings of fact. Hendrie v. Turpen (C. C. A.) 50 F.(2d) 1049. The general finding made was equivalent to a verdict of a jury. At the close of all evidence, plaintiff moved for a declaration of law and judgment in his favor. That was sufficient to present the questions raised on this appeal. Maryland Casualty Co. v. Jones, 279 U. S. 792, 49 S. Ct. 484, 73 L. Ed. 960; White v. United States (C. C. A.) 48 F.(2d) 178. The motion is denied.

Addressing ourselves to the merits of the case, stockholders in a national bank are liable for the obligations of the bank, each to the amount of the par value of his stock, and a transfer of stock made within sixty days preceding failure of a bank to meet its obligations or with knowledge of impending failure does not absolve the transferor from liability. 12 USCA § 64. A person holding stock as executor or administrator is not personally liable as a stockholder, but the estate in his hands is liable in like manner and to the same extent as the testator or intestate would be if living and competent to act and hold the stock in his own name. Section 66, Id.

■ One holding stock in a bank continues liable to assessment so long as the stock is allowed to remain registered in his name, although he may have transferred it to another, unless the transfer is appropriately noted in the records of the bank. Cases so holding exist in multiplied numbers. There are certain exceptions to that general doctrine. The transferor is not liable if he makes a bona fide sale, indorses the certificate, and requests an authorized officer of the bank to make the transfer on its records though the officer fails or neglects to do so, or in case the stock is sold to an officer of the bank, accompanied by a blank transfer, and payment is made with funds of the bank. Perhaps other exceptions obtain, but none has application here.

■ Since the stock in question stood registered in the name of Henry Forrest at the time of his death, his estate became and remained liable for the assessment. The liability was contingent from the time he acquired the stock and caused it to be registered in his name until the assessment was imposed. It then became fixed but existed throughout that period and attached to the estate upon his death in the meantime. And Rhoda Forrest, the distributee receiving the property belonging to the estate, took it burdened with the unextinguished liability even though the distribution was made prior to insolvency of the bank and before imposition of

the assessment upon the holders of shares therein. Davis v. Weed, 7 Fed. Cas. 186, No. 3,658; Whitney v. Butler, 118 U. S. 655, 7 S. Ct. 61, 30 L. Ed. 266. The facts in Matteson v. Dent, 176 U. S. 521, 20 S. Ct. 419, 44 L. Ed. 571, were quite similar to those in this case. There, the stock stood in the name of the decedent at the time of his death. It was distributed to the widow and children. The bank subsequently became insolvent and suspended business. The assessment followed. The court held that the federal statute subjected the estate to liability although insolvency occurred after the demise of the shareholder and subsequent to distribution of the property, and that since the law of the state of Minnesota rendered distributees liable for the debts of an estate, each to the amount of his distributive share, the distributees in question were liable personally for the assessment. It required the two statutes—the state supplementing the federal—to render the distributees personally liable. But the only effect the statute of the state had was to make the allottees personally liable. It did not affect the liability of the estate. The federal statute rendered it liable despite the fact that the bank became insolvent after distribution had been made. That is the effect of the decision in that case. So here, it must be held that the estate of Henry Forrest was liable for the assessment although the bank became insolvent and suspended business after the property had been distributed. And that liability carried with it an equitable lien upon the assets of the estate. Witters v. Sowles (C. C.) 32 F. 130; Drain v. Stough (C. C. A.) 61 F.(2d) 668, 87 A. L. R. 490.

Since Rhoda Forrest took the assets burdened with the obligation, the property or the proceeds thereof could be pursued into her hands. Witters v. Sowles, supra; Mann v. Kleisdorff (C. C. A.) 16 F.(2d) 997; Luce v. Thompson (C. C. A.) 36 F.(2d) 183. As distribution did not liberate the property in the hands of the distributee, certainly the subsequent conveyance to defendant did not discharge the land so conveyed because he acquired it without consideration and with full knowledge of all the facts.

Defendant never owned the stock. It never was registered in his name. Distribution of the assets in obedience to an order of the court having jurisdiction of the estate and without fraud was not enough to constitute devastavit creating personal liability on his part. It is our conclusion, therefore, that he is not personally liable, but the property acquired from his mother, formerly a part of the estate, is subject to the obligation since its acquisition was effected without consideration and with knowledge of the undischarged liability.

Plaintiff's remedy was to proceed appropriately in equity to impress the property with the lien and to enforce it. Although the action originated as one at law for the recovery of a personal judgment, plaintiff presented a motion at the close of the evidence to transfer it to the equity docket and thereafter to impress such a lien upon the property if the court determined that he was not entitled to recover at law. The court should have sustained the motion. This court has power to make the transfer. Clarksburg Tr. Co. v. Commercial Casualty Co. (C. C. A.) 40 F.(2d) 626; Moon Motor Co. v. Moon (C. C. A.) 58 F.(2d) 90. The facts were alleged in detail and the case was tried fully. Accordingly, there is no occasion for a retrial. In such circumstances, this court has the power and duty to make the transfer and, having done so, to consider the proceeding as one in equity. Irons v. Smith (C. C. A.) 62 F.(2d) 644.

Defendant delivered the stock to the bank on November 18, 1931. The bank has retained possession of it since that time. In an effort to extinguish liability, resort is made to the well-recognized doctrine that a transferor of stock in an insolvent national bank will not be held responsible for the neglect or carelessness of a bank or its officers in failing to make the transfer on the records of the bank where the transferor has done all that a prudent man would do. The contention is without effect here because the stock was thus deposited only thirteen days prior to the bank's suspension of business. Assuming that it was deposited with express direction to make the transfer on the records, that would be ineffective because the bank closed its doors and suspended business less than sixty days thereafter. Fletcher v. Porter (C. C. A.) 20 F.(2d) 23; Jeffreys v. O'Neal (C. C. A.) 64 F.(2d) 284. Furthermore, the receipt, upon which defendant relies, merely recites that the shares were held in trust for the estate of Rhoda Forrest. There is nothing in the receipt or otherwise in the record indicating that the bank was directed to note a transfer in its records.

For the reasons stated the judgment is reversed, the cause transferred to equity and remanded with directions to enter a decree in conformity with the views herein expressed.

Reversed and remanded.

268

LEWIS, Circuit Judge, dissents.

This is an action at law to recover a personal judgment against Ernest R. Forrest based on an assessment of $600.00 made by the Comptroller on six shares of the capital stock of the Nephi National Bank of Nephi, Utah. Certificates for the six shares were issued to Henry Forrest on May 8, 1907, and have remained in his name ever since. He died testate August 17, 1917, and on March 9, 1918, his son, appellee here, was appointed administrator of his estate with the will annexed. The administrator made final settlement of the estate in Probate Court in March, 1920, and on the 11th day of that month the court entered an order approving his acts, closing the estate and directing him to turn over to Rhoda Forrest, widow of decedent, all the property in his hands, specifically naming it including said six shares of bank stock, which the administrator shortly complied with. That order is not subject to collateral attack. Stovall v. Banks, 10 Wall. 583, 19 L. Ed. 1036; Simmons v. Saul, 138 U. S. 439, 11 S. Ct. 369, 34 L. Ed. 1054; Barrette v. Whitney, 36 Utah 574, 106 P. 522, 37 L. R. A. (N. S.) 368.

The bank suspended business on December 1, 1931. The Comptroller by his order found the bank to be insolvent on January 26, 1932, and appointed a receiver that day. By his order he assessed all of its stock 100% on March 8, 1932, payable April 15, 1932.

The decedent bequeathed $1,000.00 to a niece and devised all the remainder of his property as follows:

"All the rest, residue and remainder of all real and personal property, of any and every kind and nature whatever, owned by me at the time of my death, after satisfying the above named directions and bequest, I give, devise and bequeath to my beloved wife Rhoda Forrest for her sole use, behoof and benefit, in her support and maintenance for and during her natural life; and should my said wife leave, at the time of her death, any of said property, either real or personal, then I give, devise and bequeath all the rest, residue and remainder of all such property, real and personal of any and every kind and nature, to my beloved son Ernest R. Forrest and my beloved daughter Lucile Hawkins, to be equally divided between them, share and share alike."

Henry Forrest's estate consisted of real and personal property of an approximate value of $10,000.00 over and above debts and costs of administration.

Rhoda Forrest died in July, 1931, and aft-

er her death her son, the appellee, next saw the stock certificates in a small box which she had kept at her home. That was eleven years after all the property had been delivered to her under the order of distribution.

It will be observed that the stockholder died in August, 1917; that appellee as administrator made his final settlement in March, 1920; that on the 11th day of that month the court entered its order approving his acts, closing the estate, and directing him to turn all the property in his hands over to Rhoda Forrest. There was no proof that any other property belonging to the estate came into his hands as administrator thereafter. The finding of insolvency and the making of the assessment by the Comptroller were approximately twelve years after the estate was closed and its assets distributed in accordance with the will. The Acts of Congress (12 U. S. Code, §§ 63 and 64 [12 USCA §§ 63, 64]) provide the double liability of shareholders, and section 66 thereof reads in this way:

"Persons holding stock as executors, administrators, guardians, or trustees, shall not be personally subject to any liabilities as stockholders; but the estates and funds in their hands shall be liable in like manner and to the same extent as the testator, intestate, ward, or person interested in such trust funds would be, if living and competent to act and hold the stock in his own name."

Later sections provide for the procedure to be taken by the Comptroller, but it is to be observed that section 66 exempts those in representative capacity from personal liability for the assessment and restricts their liability to the assets and funds in their hands. Notwithstanding what was said in Matteson v. Dent, 176 U. S. 521, 20 S. Ct. 419, 44 L. Ed. 571, we must now take the liability as a statutory one. McDonald v. Thompson, 184 U. S. 71, 22 S. Ct. 297, 299, 46 L. Ed. 437, McClaine v. Rankin, 197 U. S. 154, 25 S. Ct. 410, 49 L. Ed. 702, 3 Ann. Cas. 500; Christopher v. Norvell, 201 U. S. 216, 225, 26 S. Ct. 502, 50 L. Ed. 732, 5 Ann. Cas. 740; Page v. Jones (C. C. A.) 7 F.(2d) 541, 544. No liability exists under the statute, nor cause of action accrues until a finding of insolvency and assessment made by the Comptroller. In McDonald v. Thompson, supra, the court said: "In such cases no debt becomes due to the receiver as such until a deficiency has been ascertained and an assessment made. * * *" In Rankin v. Barton, 199 U. S. 228, 232, 26 S. Ct. 29, 30, 50 L. Ed. 163, the court said: "In other words,

the liability dates from the order of the Comptroller."

Both of those findings were made in this case in 1932, long after the estate was closed and all of its assets were distributed, and according to the undisputed testimony nothing had occurred prior to December 1, 1931, when the bank closed its doors, which caused appellee or would have caused any reasonable person to suspect that it was in an insolvent condition or might become so; and that was almost eleven years subsequent to the distribution of the assets of the estate. I am therefore unable to see any ground on which appellant can maintain his contention that the case comes within the terms of said section 66. There was no estate, no part of Henry Forrest's estate, in the hands of appellee when insolvency occurred and assessment was made, nor for many years prior thereto. Cases that have been held to come within the scope of said section are those where the stockholder died prior to insolvency and the making of the assessment and when the estate was not fully administered, and the assets remaining unadministered were made subject to the assessment. Zimmerman v. Carpenter (C. C.) 84 F. 747, 751; Luce v. Thompson (C. C. A.) 36 F.(2d) 183. The application of said section to that condition is obvious. As said in the Zimmerman Case, "if no liability on the stock arises until after the estate is fully distributed, then there would be no estate to be charged." For twelve years prior to the assessment in this case there had been no estate of Henry Forrest, but it is said there was a lien on the property of the estate of Henry Forrest for the satisfaction of this assessment. No lien is given by statute, although the liability is fixed by statute. The lien is said to be equitable. In Hodges v. Meriwether (C. C. A.) 55 F.(2d) 29, 31, 86 A. L. R. 52, a like contention was made by the receiver. In response thereto the court said: "But no lien, equitable or otherwise, attached to this property while it was the property of the estate, and it passed to her clear of any such lien." Zimmerman v. Carpenter, supra, cited to sustain a contrary conclusion in Drain v. Stough (C. C. A.) 61 F.(2d) 668, does not support that view. The statement in Mann v. Kleisdorff (C. C. A.) 16 F.(2d) 997, 998, that in event an assessment is made after the running of the local statute of limitations the receiver could pursue his remedy against funds of decedent "into whosoever hands they might have come," is obiter. Moreover, it does not appear that there were no funds of the estate in the hands of the executrix at the time

the assessment was made, as here. There were no liens at common law without possession by the one claiming the lien. "Its policy was to discountenance secret liens inasmuch as they hinder trade and restrict the safe and speedy transfer of property." It is true that the creditors of a bank, whom the receiver here represents, had an equitable lien on the capital stock of the bank, the funds paid in or to be paid in on subscription therefor, and those to be paid on this assessment; but it certainly cannot be that such a lien extends to all of the other property of each stockholder. Pomeroy's Equity Jurisprudence, § 1234, is in part this:

"The theory of equitable liens has its ultimate foundation, therefore, in contracts, express or implied, which either deal with, or in some manner relate to, specific property, such as a tract of land, particular chattels, or securities, a certain fund, and the like."

I find no authority sustaining the proposition that creditors of the corporation have an equitable lien on property of the stockholders aside from his interest in its capital stock. That lien, as pointed out by Cook on Corporations and other text-writers, may be created by statute, by charter, or possibly by by-law or contract. There being no property or funds belonging to the estate of Henry Forrest in the hands of appellee as administrator at the time liability for the assessment arose and the cause of action accrued, nor for more than eleven years prior thereto, there was no res to which the asserted lien could attach nor assets of the estate to be followed into the hands of distributees. Moreover, the statute of Utah, § 7673 of the Compiled Laws of 1917, provides:

"When the accounts of the administrator or executor have been settled, and an order made for the payment of debts and distribution of the estate, no creditor whose claim was not included in the order for payment has any right to call upon the creditors who have been paid, or upon the heirs, devisees, or legatees to contribute to the payment of his claim. * * *"

This statute is contrary to the statute of Minnesota relied upon in Matteson v. Dent, supra, which sustained the right to recover in that case. Matteson, a National bank stockholder, died in July, 1895, intestate while residing in St. Paul, Minnesota. The Probate Court there approved a final accounting in the administration of his estate in September, 1896, and entered a decree turning it over to his heirs. Thereafter in that year the bank became insolvent and an as-

sessment was made against his shares by the Comptroller in January, 1897. The heirs were sued by the bank's receiver to recover the distributive shares received by them or so much thereof as might be necessary to satisfy the assessment. The action was brought in a state court of Minnesota and was based on its statute, which provided that an action might be brought against all or part of the next of kin of deceased by his creditors to recover the distributive shares received by them out of an estate, or so much thereof as might be necessary to satisfy a debt of the intestate or his estate. Recovery was affirmed by the Supreme Court of Minnesota, 70 Minn. 519, 73 N. W. 416, and Id., 73 Minn. 170, 75 N. W. 1041. The Supreme Court of the United States in that case (Matteson v. Dent, 176 U. S. 521, at pages 529, 530, 20 S. Ct. 419, 422, 44 L. Ed. 571) said: "Whether the effect of the allotment (distribution of the estate) was to extinguish the estate was wholly dependent on the Minnesota law." The estate of Henry Forrest was extinguished by the Utah statute on the order of distribution and its execution, and the property thereof in the hands of the distributees and their grantees was beyond the reach of said section 66, supra. In Zimmerman v. Carpenter (C. C.) 84 F. 747, 751, Judge Carland, in construing said section 66, makes this statement: "If no liability on the stock arises until after the estate is fully distributed, then there would be no estate to be charged." In Luce v. Thompson, supra, recovery was based in part on the opinions of the Supreme Court of Iowa wherein that court had applied the same rule that was set up by the statute of Minnesota, permitting creditors to pursue the property of the decedent into the hands of the distributees in satisfaction of their claims.

It has been noted that the assessment of the Comptroller was for the full 100% of the face value of the stock. The complaint, parts of which are quoted in the majority opinion, seems to assume that appellee by his conduct became a stockholder in his father's stead and may be sued as such. I cannot agree with the assumption nor the conclusion therefrom, but accepting it for present purposes, then, in that event suit to recover by a receiver can only be at law and not in equity. Aufdenkamp v. L'Herrison (C. C. A.) 56 F.(2d) 344, and cases there cited.

There is another matter. Where section 66, supra, applies no lien can be adjudged by a court out of possession against property in the exclusive and lawful custody of a court of another jurisdiction, and no final judgment can be entered by such a court that would authorize the levy of an execution upon it, because it is already in custodia legis. The only remedy that can be afforded by a court to enforce an assessment under the conditions set up in said section 66 is to allow the claim and provide that it be satisfied out of the property in the hands of the administrator. This is clearly pointed out by Judge Shiras in Wickham v. Hull (C. C.) 60 F. 326, 327. In my opinion the judgment of the District Court should be affirmed.