# McDONALD *v.* THOMPSON.

APPEAL FROM THE ·CIRCUIT COURT OF APPEALS FOR THE EIGHTH
CIRCUIT.

No. 35.   Argued January 13, 14, 1902.—Decided February 3, 1902.

To a bill in equity by a receiver of a national bank to recover an assessment'
made by the Comptroller of the Currency to the amount of the par value
of the shares formerly owned by one of the stockholders, defendant
pleaded the statute of limitations.   The statute provided that·actions
upon contracts in writing should be brought within five years, but that
actions brought upon contracts not in writing or upon liabilities created
by statute should be brought within four years.   *Held:* That a bill to
recover the assessment in question was not brought upon a contract in
writing, but upon an implied contract not in writing, or upon a liability
created by statute, and that the suit was barred.

THIS was a bill in equity originally filed May 20, 1898, in
the Circuit Court for the District of Nebraska, by Kent K.
Hayden, receiver of the Capital National Bank of Lincoln,
Nebraska, (of whom the present appellant is the successor in
office,) against David E. Thompson, to recover defendant's pro-
portion of an assessment upon the stockholders of the bank to
the amount of the par value of their shares.   The bank failed
on January 23, 1893, and a receiver was shortly thereafter ap-
pointed.   On June 10, 1893, the Comptroller of the Currency
ordered the assessment, which was made payable July 10, 1893.

The bill alleged Thompson to have been the owner of 210
shares of the capital stock, which he had acquired upon sub-
scription to such stock and as a part of the original issue ; that
he, knowing the bank to be in a failing condition and practically
insolvent, and in anticipation of its approaching failure,.had
sold and caused such stock to be transferred to certain irre-
sponsible parties, and that such transfer was made with intent
to defraud the bank, its depositors and creditors.

Defendant demurred upon the ground that it appeared by
the bill that the cause of action was barred by the statute of

limitations.   The demurrer was sustained, the bill amended, another demurrer interposed and sustained, and the bill dismissed.   An appeal was taken to the Circuit Court of Appeals, which affirmed the judgment of the Circuit Court.

*Mr. J. R. Webster* for appellant.   *Mr. John H. Ames* and *Mr. A. E. Harvey* filed a brief for same.

*Mr. Halleck F. Rose* for appellee.

Mr. Justice Brown, after making the above statement, delivered the opinion of the court.

This bill is founded upon Rev. Stat., § 5151, which declares that "the shareholders of every national banking association shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts and engagements of such association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares," etc.   By section 5234 the Comptroller of the Currency is authorized to appoint a receiver of insolvent banks, who " may, if necessary to pay the debts of such association, enforce the individual liability of the stockholders."

The case turns upon the applicability of the state statute of limitations, which, so far as it is material, reads as follows :

" Sec. 5. Civil actions can only be commenced within the time prescribed in this title after the cause of action shall have accrued."

" Sec. 10. Within five years, an action upon a specialty, or any agreement, contract or promise in writing, or foreign judgment.

" Sec. 11. Within four years, an action upon a contract not in writing, express or implied ; an action upon a liability created by statute other than a forfeiture or penalty."

As the cause of action in this case accrued on July 10, 1893, when the assessment was made payable, *Hawkins* v. *Glenn*, 131 U. S. 319 ; *Glenn* v. *Marbury*, 145 U. S. 499 ; *Thompson* v. *German Insurance Company*, 76 Fed. Rep. 892 ; *Van Pelt* v.

*Gardner,* 54 Neb. 701, and the action was begun on May 20, 1898, more than four but less than five years thereafter, the case really turns upon the question whether the action is upon a " contract or promise in writing," or " upon a contract not in writing, express or implied," or " upon a liability created by statute." If the cause of action be upon a written contract, the action was brought in time. If upon a contract not in writing, or a statutory liability, the statute of limitations is a complete bar.

Used in this connection and as distinguished from a contract not in writing, express or implied, we think it entirely clear that section 10 contemplates an action between the immediate parties or their privies to a written contract, and that the only contract covered by that definition in this case is the one arising from the allegation of the bill that Thompson was the owner of 210 shares of the original capital stock, and " that he acquired the same upon subscription to such capital stock," and by a receipt of certificates for such shares. The only contract to be gathered from this allegation is one between the bank on the one hand and the defendant on the other, by which the latter agreed to take and pay for a certain number of shares, and the former agreed to issue certificates to him for the same. Had the action been brought upon this contract, as for instance by the bank to recover an unpaid assessment upon the original shares, the case would have fallen within section 10, and the suit might have been brought within five years.

But there was no contract in writing with the creditors or depositors of the bank, and none with the bank itself, to which the receiver could be said to be a privy, except to pay for the stock as originally issued. Granting there was a contract with the creditors to pay a sum equal to the value of the stock taken, in addition to the sum invested in the shares, this was a contract created by the statute, and obligatory upon the stockholders by reason of the statute existing at the time of their subscription ; but it was not a contract in writing within the meaning of the Nebraska act, since the writing—that is, the subscription—contained no reference whatever to the statutory obligation and no promise to respond beyond the amount of the subscription. In

none of the numerous cases upon the subject in this court is this obligation treated as an express contract, but as one created by the statute and implied from the express contract of the stock-holders to take and pay for shares in the association. *Carrol* v. *Green*, 92 U. S. 509, 512; *Terry* v. *Little*, 101 U. S. 216; *Concord First National Bank* v. *Hawkins*, 174 U. S. 364; *Matteson* v. *Dent*, 176 U. S. 521; *Whitman* v. *Oxford National Bank*, 176 U. S. 559.

While section 10 does not use the words " express contract " but the words " contract or promise in writing," we think that, taken in connection with section 11, which is confined to contracts not in writing, express or implied, express contracts are primarily and principally intended by the earlier section. These are defined to be those contracts in which the terms of the agreement are fully and openly incorporated at the time the contract is entered into, while implied contracts are such as arise by legal inference and upon principles of reason and justice from certain facts, or where there is circumstantial evidence showing that the parties intended to make a contract. 2 Black. Com. 443. As contracts for subscription to stock contain no stipulation with reference to the rights of creditors and depositors, it is clear that such rights can only be asserted upon the theory that the subscriber impliedly bound himself to respond to any liability arising indirectly from his contract of subscription.

Whether the promise raised by the statute was an implied contract not in writing or a liability created by statute, it is immaterial to inquire. For the purposes of this case it may have been both. The statute was the origin of both of the right and the remedy, but the contract was the origin of the personal responsibility of the defendant. Did the statute make a distinction between them with reference to the time within which an action must be brought it might be necessary to make a more exact definition; but as the action must be brought in any case within four years, it is unnecessary to go farther than to declare what seems entirely clear to us, that it is not a contract in writing within the meaning of section 10 of the Nebraska act. *Hawkins* v. *Furnace Company*, 40 Ohio St. 507.

Plaintiff, however, insists that defendant's contract, here sought to be enforced, was not entered into between him and the bank, but between him and the creditors of the bank; that the order of the Comptroller of the Currency for the assessment of the shareholders did not create a cause of action or set the statute of limitations running, nor in any way affect the validity or duration of the right which belongs to the creditors to have this liability enforced; and that the action, not being upon the contract of subscription but upon the contract of the shareholder with the creditors of the bank, entered into by himself with the creditors through the agency of the officers of the bank, different considerations apply, and the statute of limitations does not operate as a bar so long as there are any outstanding claims against the bank.

In support of this proposition we are referred to section 2 of the act of June 30, 1876, c. 156, 19 Stat. 63, which declares: " That when any national banking association shall have gone into liquidation under the provisions of section 5220 of said [Revised] statutes, the individual liability of the shareholders provided by section 5151 of said statutes may be enforced by any creditor of said association, by bill in equity in the nature of a creditor's bill, brought by such creditor on behalf of himself and all other creditors of the association against the shareholders thereof," etc.; and we are cited to several cases holding that claims against shareholders under similar statutes do not become barred until the expiration of the time at which the claims against the corporation also became barred.

There are several answers to this position. Section 5220, to which the second section of the act of June 30, 1876, is supplementary, contemplates only a voluntary liquidation, providing, as it does, that " any association may go into liquidation and be closed by the vote of its shareholders owning two-thirds of its stock." *Richmond* v. *Irons*, 121 U. S. 27, 47. Now, the Capital National Bank did not go into voluntary liquidation, but, as averred in the bill, " the Comptroller of the Currency of the United States became and was satisfied of the insolvency of the said Capital National Banking Association," and thereupon appointed a receiver. In other words, the proceedings

were taken under section 5234 as supplemented by section 1 of the act of June 30, 1876, authorizing the Comptroller of the Currency to appoint a receiver when the association had refused to pay its circulating notes and is in default, or he is otherwise satisfied of its insolvency.

But it is also sufficient to say of this that the action is not brought by the creditors under the second section of the act of June 30, 1876, but by the receiver under Rev. Stat. sec. 5234. In such cases no debt becomes due to the receiver as such until a deficiency has been ascertained and an assessment made, when the statute begins to run. *Scovill* v. *Thayer*, 105 U. S. 145; *Hawkins* v. *Glenn*, 131 U. S. 319. Upon the theory of the plaintiff, if the statute of limitations were pleaded, it would become necessary for the receiver to show that there were outstanding claims against the bank which were not barred by the statute, and therefore that the bill might be maintained. This would involve a departure from the whole theory of the bill in this case, which is based upon the allegation that the Comptroller of the Currency made an assessment upon the stockholders June 10, 1893, payable July 10, from which latter date plaintiff *claimed interest*. Defendant demurred to this upon the ground that the bill *set forth a cause of action* barred by the statute, and plaintiff went to a hearing upon this demurrer and was defeated. Obviously he cannot now set up a right to recover, if the creditors had brought a bill under another statute, to which no allusion is made in the bill in this case, and which provides for a wholly separate and independent remedy.

Plaintiff's final contention, that no cause of action arises until a demand has been made, is also fully met by the allegation of the bill that on June 10, 1893, the Comptroller of the Currency made an order in which he declared that he had made an assessment and requisition upon the shareholders, " and that he did thereby make demand upon each and every share of the capital stock of the said association," and directed the receiver to take proceedings by suit to enforce the individual liability of the shareholders. Having made this allegation himself, we do not understand upon what theory the plaintiff now assumes that no demand was made.

In the view we take of the statute of limitations, we have not thought it worth while to consider the points made by the defendant that the action should have been at law and that the bill is defective for the want of proper parties.

There was no error in the decree of the court below, and it is therefore

*Affirmed.*