**ANDERSON v. BANKS–MILLER SUPPLY CO. et al.**

**Civ. A. No. 3072.**

District Court, S. D. West Virginia.

April 19, 1945.

Philip P. Gibson, of Huntington, W. Va., and Harry Kasfir, of Cincinnati, Ohio (Nichols, Wood, Marx & Ginter and Robert S. Marx, all of Cincinnati, Ohio, on the brief), for plaintiff.

George S. Wallace, of Huntington, W. Va., for defendant Meyer Mittenthal.

HARRY E. WATKINS, District Judge.

This action was instituted in 1936 by A. M. Anderson, receiver of the National Bank of Kentucky, of Louisville, against Banks-Miller Supply Company, Meyer Mittenthal and others, to recover an assessment on shares of such national bank held by Banco Kentucky Company, a bank stock holding company. The bank stock was held by such Banco company and the defendants were stockholders of Banco. This case has been continued, awaiting decision upon appeal of a companion case previously tried in the United States District Court at Louisville. The District Court (Anderson v. Abbott, 32 F.Supp. 328) and the Sixth Circuit Court of Appeals (127 F.2d 696) both held that the stockholders of Banco were not liable, and the Supreme Court reversed, holding that stockholders of Banco were liable for such assessment. Anderson v. Abbott, 321 U.S. 349, 64 S.Ct. 531, 88 L.Ed. 793. Following this decision, all of the defendants in this case, except the defendant Meyer Mittenthal, have settled the claims against them. As to the defendant Meyer Mittenthal, the case has been submitted to the court for decision upon an agreed statement of facts. By court order following a pre-trial conference the issues have been limited to the following special defenses now raised by Mittenthal:

1. Defendant Meyer Mittenthal was not, on February 20, 1931, the date of assessment against stockholders, the actual or beneficial owner of the 500 shares of Banco Kentucky stock mentioned therein because: (a) on the date of assessment the Banco Kentucky stock standing in defendant's name had been pledged and delivered as collateral to Louisville Trust Company to secure payment of a loan; (b) at the date of such assessment defendant was insolvent and had defaulted in the payment of such loan, and (c) that in March, 1932, such stock was sold by the pledgee bank.

2. There was no valid assessment against Mittenthal because (a) the notice of assessment was sent to him in care of Jefferson Dry Goods Company, Louisville, Kentucky, whereas Mittenthal had left that city, and (b) it is stipulated that Mittenthal did not receive such notice of assessment, and consequently did not list the same as part of his indebtedness in his subsequent bankruptcy proceeding.

3. Mittenthal's liability, if any, has been discharged in bankruptcy.

4. Mittenthal is, under no circumstances, liable for payment of any interest on such stock assessment.

Looking to the first defense, it appears from the stipulation of facts that defendant never owned or had issued to him any stock in the National Bank of Kentucky, and if he is held to be a stockholder in the National Bank of Kentucky, it must be based on the fact that he owned stock in Banco. The facts are not in dispute. On October 14, 1929, defendant purchased over the counter from Louisville Trust Company 500 shares of stock in Banco Kentucky Company for $12,500, of which $2,500 was paid in cash and the remainder was paid by a loan of $10,000 from Louisville Trust Company, secured by the 500 shares of Banco as collateral. The Banco stock was issued to defendant, endorsed by him and delivered to the Louisville Trust Company as collateral for the $10,000 note. This note was renewed from time to time and later consolidated with other debts owed by defendant to the Louisville Trust Company. The renewal note was for $30,000, payable on January 8, 1931, and was secured by the Banco stock and other collateral. By this time defendant had left Louisville and was insolvent. At maturity defendant defaulted

in payment of principal and interest. The National Bank of Kentucky failed on November 17, 1930, and on February 20, 1931, the Comptroller of the Currency of the United States levied an assessment against the shareholders of that bank. The Banco stock held as collateral was not sold until March, 1932, more than a year after the stock assessment. Defendant's first defense is that under these facts he was not the actual or beneficial owner of the Banco stock, because the stock registered in his name was pledged as collateral, that he was insolvent, and had defaulted in payment of his note at the time the stock assessment was made. This position is so obviously unsound that it deserves little attention. The fact that defendant endorsed his certificates and delivered them to the Louisville Trust Company as collateral does not affect his liability. Even the fact that a person has never received possession of the stock certificate is no defense to a statutory action in favor of creditors. Williams v. Stone, 4 Cir., 1928, 25 F.2d 831. That defendant had defaulted in the payment of his note, had become insolvent and left the city when the assessment was made, does not, as defendant seems to believe, strengthen his position to the slightest degree.

The second and third defenses are related and will be discussed together. Defendant admits that the Comptroller of Currency levied the assessment, but says that he had left Louisville, did not receive the notice of assessment, and for that reason did not include the liability in his subsequent bankruptcy proceedings. Under these circumstances defendant says that there was no valid assessment against him, and that his liability, if any, was discharged by his subsequent bankruptcy.

The agreed stipulation of facts shows that on March 20, 1931, the plaintiff as receiver of the National Bank of Kentucky sent out a notice to stockholders of Banco informing them of the assessment against the stockholders of the insolvent bank; that a demand for payment had been made against the receiver of Banco, and that it was the intention of the receiver of the insolvent bank "to proceed against you for the collection of the aforesaid assessment liability represented by the said trustees' participation certificates held by said Banco Kentucky Company, to the extent that the undersigned, as Receiver of The National Bank of Kentucky, is un-

able to collect said assessment from Banco Kentucky Company or its Receiver". This notice went by registered letter addressed to the defendant in care of Jefferson Dry Goods Company, 4th and Jefferson Streets, Louisville, Kentucky, the address shown on the records of the transfer agent of Banco as the address of defendant, which address was furnished to the plaintiff as receiver of the insolvent bank by the transfer agent. The return receipt of the registered letter was signed by some person other than defendant. Defendant never actually received the letter. Under these circumstances plaintiff did all that he was required to do. He mailed the notice to the last-known address of the defendant. It has been held that notice of such assessment is not a prerequisite to the maintenance of suit. Rankin v. Miller, D.C., 207 F. 602. It is the Comptroller's order of assessment which is the basis of the suit. McClaine v. Rankin, 197 U.S. 154, 162, 25 S.Ct. 410, 49 L.Ed. 702, 3 Ann.Cas. 500. As was said in McDonald v. Thompson, 184 U.S. 71, 22 S.Ct. 297, 299, 46 L. Ed. 437, the claim that no demand was made "is also fully met by the allegation of the bill that * * * the Comptroller of the Currency made an order in which he declared that he had made an assessment and requisition upon the shareholders, 'and that he did thereby make demand upon each and every share of the capital stock of said association,' and directed the receiver to take proceedings by suit to enforce the individual liability of the shareholders." If defendant had made an investigation, he would have discovered his liability and could have included same in his subsequent bankruptcy schedules. He should have made that investigation because it was his duty to list all of his creditors and all his assets.

The fourth defense relates to the matter of interest. A similar question was raised in the Western District of Kentucky after the Supreme Court decided the Abbott case. Some of the defendants who were held liable for such assessment objected to paying interest. The District Court overruled these objections, whereupon the objecting shareholders asked leave of the Supreme Court of the United States to file a mandamus proceeding against the District Judge, which was denied. An appeal was then taken to the ruling of the District Court to the Sixth Circuit Court of Appeals. That court held that such defendants were liable for interest from the date the assessment was due, in an opinion filed April 9, 1945, Abell v. Anderson, 148 F.2d 372.

Here defendant assigns as a further reason for not paying interest that this case has been on the docket of this court since 1936; that he has wanted the case tried but that it has been continued awaiting the final decision of the appellate courts in the Abbott case.

. By rule of this court which has been in effect for more than thirty years, counsel for any party desiring trial of any civil action upon the docket shall give notice to opposing parties or their counsel at least twenty days before each regular term of court. Defendant admits that he has never given such notice. He says that he has appeared at each term of court and announced that he was ready for trial. On each occasion counsel for plaintiff informed the court that the Abbott case involving the same question of liability was still pending and undecided upon appeal, and suggested that it would be to the interest of all parties concerned for the case to be continued until a decision was reached in the Kentucky case. That case had taken many weeks to try and the principal point in our case had been squarely raised in the Kentucky case. On each occasion the case was passed until the next term of court, upon motion of counsel for plaintiff, and at no time did defendant or his counsel ever make any objection to such continuance, or otherwise let the court know that he disapproved of such continuance. Counsel for defendant was quite diligent in answering the call of the docket at each term of court and frequently stated that he would like to get the case disposed of as soon as possible, or words to that effect. In that respect, he expressed the sentiment of all parties. At times the court made specific inquiry as to whether any party objected to such continuance and there being no objection expressed at any time, the case was continued. Generally the court made no such specific inquiry, but acted on the motion of the plaintiff, counsel for defendant being present and never opposing or objecting to such continuance. The first intimation the court ever had that such continuances did not meet with the approval of all parties was a short time ago after the decision of the Supreme Court holding shareholders of Banco liable for the assessment. When

the court called counsel in for a pretrial conference, insisting that the case be heard, counsel for defendant let the court know for the first time that he disapproved of the continuances. The defendant is liable for such stock assessment together with interest thereon from the date such assessment was due.