**HOLMBERG et al. v. ARMBRECHT et al.**

**No. 305.**

Circuit Court of Appeals, Second Circuit.

July 13, 1945.

Edgar M. Souza, of New York City (Cook, Lehman, Goldmark & Loeb, of New York City, on the brief), for defendants-appellants.

Clarence Fried, of New York City (Franklin S. Wood, of New York City, on the brief), for plaintiffs-appellees.

Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This appeal presents the interesting question of the applicability of a state statute of limitations to a federally created equitable right. The District Court held that as to "a bill in equity" "the state statute of limitations is not recognized law in this court," citing Russell v. Todd, 309 U.S. 280, 60 S.Ct. 527, 84 L.Ed. 754, and York v. Guaranty Trust Co., 2 Cir., 143 F.2d 503. Decision of this appeal was delayed to await the Supreme Court's review of the latter case; and upon its reversal by Guaranty Trust Co. v. York, 65 S.Ct. 1464, June 18, 1945, the parties herein, with permission of the court, filed supplemental briefs discussing the effect of that most recent precedent. Defendants argue that it is substantially controlling, while plaintiffs contend that it is applicable only to state-created rights enforced under the diversity-of-citizenship jurisdiction of the federal court.

The present action, brought by creditors of the Southern Minnesota Joint Stock Land Bank of Minneapolis to recover an assessment of 100 per cent on the par value of stock of the bank under § 16 of the Federal Farm Loan Act, 12 U.S.C.A. § 812, was instituted in November, 1943, against Charles Armbrecht, as owner of record, and Jules S. Bache, as beneficial owner, of 100 shares of the bank's stock. Plaintiffs rested federal jurisdiction both on the statute and on the diverse citizenship of the parties. This action represented the culmination of a series of legal moves to recover from the stockholders an amount

equal to the par value of their stock following the closing of the bank May 2, 1932, in a completely insolvent condition. In an action instituted by these plaintiffs on July 28, 1932, the District Court for the District of Minnesota appointed a receiver for the collection of these assessments. Holmberg v. Southern Minnesota Joint Stock Land Bank of Minneapolis, D.C.Minn., 10 F. Supp. 795; cf. Holmberg v. Anchell, D.C. S.D.N.Y., 24 F.Supp. 594, affirmed Holmberg v. Merrick, 2 Cir., 110 F.2d 1022. Thereafter the receiver, usually obtaining ancillary appointment, brought actions to effect such collection in several state and federal jurisdictions until it became settled that the only method of enforcement of the statutory liability was through an equitable class action brought on behalf of bank creditors. Holmberg v. Carr, 2 Cir., 1936, 86 F.2d 727; Christopher v. Brusselback, 1938, 302 U.S. 500, 58 S.Ct. 350, 82 L.Ed. 388. In one of the actions which thus failed, defendant Armbrecht was named as a party and was served with process in New York City on August 13, 1936.

On May 2, 1942, to avoid any possible effects of the New York statute of limitations, the plaintiffs instituted an action to recover on this stock against various defendants, including Armbrecht, not served in Holmberg v. Anchell, supra, and joined as defendants the partners doing business as J. S. Bache & Company. But the only defendant served was Morton F. Stern, a partner of the firm.[1] At a pre-trial examination he testified that J. S. Bache & Company had no interest in the stock and that at the time of the bank's failure Jules S. Bache was the beneficial owner. Thirteen months thereafter and eleven and one-half years after the bank's failure, this action was commenced against Bache and Armbrecht. Defendants pleaded as affirmative defenses laches and the New York ten-year statute of limitations, N.Y. Civil Practice Act, § 53, applicable when no other limitation is specifically prescribed. The District Court having granted recovery for the $10,000 sought, the validity of these affirmative defenses constitutes the sole issue on this appeal.

In denying the defense of laches the District Court relied on the prior history of these proceedings and agreed with plaintiffs' contention that defendant Bache was guilty of inequitable conduct by placing the stock in the name of Armbrecht in order to avoid possible double liability and by not disclosing the true identity of Armbrecht or his whereabouts so as to make proper service possible. The court also accepted the view that the Bache action could not have been brought before Stern's examination disclosed the identity of the beneficial owner of the stock. Defendants, however, contend that these are conclusions from admitted facts, rather than factual findings, and that they are erroneous, pointing out that the stock was placed in Armbrecht's name long before insolvency, on January 20, 1928 (the District Court's finding that this was done in 1931 is obviously an error, as the documentary records show); that placing stock in the name of a nominee is an old Wall Street custom in no way forbidden by law; that plaintiffs knew of the correct legal procedure as early as 1936, and with reasonable diligence could have discovered and served Armbrecht, who lived throughout the period in the Bronx in New York City, instead of relying upon some process-server's assertion that he could not be found; and that either such an action against Armbrecht or inquiry at the Bache Company would have disclosed at once the interest of Jules S. Bache in the stock, which was not concealed. Decision of these matters and a fuller recital of the facts bearing upon them become unnecessary, however, in view of our conclusion that the rationale of the York case requires the application of the New York statute to this action.

For decision of our problem we must examine both the York case and the earlier case which it expounds, namely, Russell v. Todd. The latter was an action identical with ours here, for a stock assessment under this same provision of the Federal Farm Loan Act. The Court, finding such liability enforceable only by a single representative suit in equity, held inapplicable the New York three-year statute of limitations governing actions against directors or stockholders of banking associations, N.Y.

---

[1] Defendant Armbrecht on March 24, 1943, moved to quash service claimed to have been made upon him, and the District Court granted his motion on October 28, 1943. Thereafter this action was treated as consolidated with the present action, and they were tried together; but the court found that the partnership had no interest in the stock, and dismissed the earlier action as against Stern. No appeal was taken from this dismissal.

Civil Practice Act, § 49, par. 4, citing state decisions holding this provision inapplicable to purely equitable remedies. It did not have occasion to pass on the ten-year statute (the action there being brought three years and eight months after it accrued), which under state decisions unquestionably affects all forms of equity suits. Equity Corporation v. Groves, 294 N.Y. 8, 60 N.E.2d 19; Ford v. Clendenin, 215 N.Y. 10, 16, 109 N.E. 124, Ann.Cas.1917A, 658; Gilmore v. Ham, 142 N.Y. 1, 6, 36 N.E. 826, 40 Am.St.Rep. 554; Mencher v. Richards, 256 App.Div. 280, 282, 9 N.Y.S.2d 990. In fact it answered the claim that under New York law laches was not a defense and that in the light of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, and Ruhlin v. New York Life Ins. Co., 304 U.S. 202, 58 S.Ct. 860, 82 L.Ed. 1290, federal courts "are no longer free to apply a different rule" in the exercise of their statutory equitable jurisdiction by saying, 309 U.S. at page 294, 60 S.Ct. at page 534, 84 L.Ed. 754: "But in this case laches has not been held to be a defense and the Court has not declined to give effect to a state statute shown to be applicable. In the circumstances we have no occasion to consider the extent to which federal courts, in the exercise of the authority conferred upon them by Congress to administer equitable remedies, are bound to follow state statutes and decisions affecting those remedies."

 The opinion in the York case begins by quoting this reservation of the Todd case and then says, "The question thus carefully left open in Russell v. Todd is now before us." [65 S.Ct. 1465.] And the Court thereupon decides that recovery in a federal court must be barred by a state statute of limitations if recovery in a state court will be thus barred. True, the Court carefully limits its decision to diversity cases, saying, "We put to one side the considerations relevant in disposing of questions that arise when a federal court is adjudicating a claim based on a federal law," citing cases under the rubric "for instance." This express reservation is the foundation of the plaintiffs' present contention herein, but we think they push it beyond what the Court intended. The cases cited were Board of Com'rs v. United States, 308 U.S. 343, 60 S.Ct. 285, 84 L.Ed.313; Deitrick v. Greaney, 309 U.S. 190, 60 S.Ct. 480, 84 L.Ed. 694; D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp., 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956; Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838; O'Brien v. Western Union Telegraph Co., 1 Cir., 113 F.2d 539. These cases, based on federal enactments, state no more than the obvious principle that a rule of state law will be disregarded by a federal court when inconsistent with the federal statute governing the case before it. Hence where the federal statute contains its own period of limitation—e.g., as in the Federal Employers' Liability Act, 45 U.S. C.A. § 56—the state law must necessarily yield. But as the Court pointed out in the Todd case, 309 U.S. 280, 293, 60 S.Ct. 527, 534, 84 L.Ed. 754, "in the absence of a controlling act of Congress federal courts of equity, in enforcing rights arising under statutes of the United States, will * * * adopt and apply local statutes of limitations which are applied to like causes of action by the state courts." So here, where there is an applicable state statute, we should give it effect, particularly now that the York case has admonished us not to create differences between law and equity actions when the state courts have none.

Plaintiffs, however, stress a footnote to Russell v. Todd, 309 U.S. 280, 288, 60 S.Ct. 527, 532, 84 L.Ed. 754, where the Court, in giving an historical résumé of federal precedents, pointed out that federal courts of equity had not considered themselves obligated to apply local statutes of limitations when they conflicted with equitable principles, "as where they apply, irrespective of the plaintiff's ignorance of his rights because of the fraud or inequitable conduct of the defendant." From its setting in a footnote and its context, this appeared to be intended as a statement of historical background, rather than present law; and this was emphasized by the Court's caveat at the end of its decision, quoted above. That this was actually the Court's meaning seems now demonstrated both by the discussion in the York case and by what has happened to the precedents cited. The ones really directly on the point urged by plaintiffs are Kirby v. Lake Shore & M. S. R. Co., 120 U.S. 130, 7 S.Ct. 430, 30 L.Ed. 569, and Stevens v. Grand Central Mining Co., 8 Cir., 133 F. 28, and Johnson v. White, 8 Cir., 39 F.2d 793, 798, both based on the Kirby case. But the Kirby case was overruled by the York case, the Supreme Court stating that "nothing that was decided, unless it be the Kirby case, needs to be re-

832

fected." Consequently any limitation based on the Kirby case that might be read into the Todd case was also rejected.

The York case indeed went further than this. The essence of its holding is that limitations go to the substantive rights of the parties, which ought not to vary with the remedy; and hence there should be no distinction in limitation periods in diversity cases between those arising under the federal court's equity powers and those arising in law, provided the respective state statutes and decisions make no such distinction. And no sound reason is offered why such a distinction should be made when, as here, the right sought to be enforced is created by a federal statute. In enforcing legal rights under a federal statute, state limitation statutes have always been applied, as in proceedings to enforce private rights under the antitrust laws, Chattanooga Foundry & Pipe Works v. City of Atlanta, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241, Holmes, J.; cf. Momand v. Universal Film Exchange, D.C.Mass., 43 F.Supp. 996, 1008, Wyzanski, J.; Hansen Packing Co. v. Swift & Co., D.C.S.D.N.Y., 27 F.Supp. 364, Galston, J., or for the infringement of patents, Campbell v. City of Haverhill, 155 U.S. 610, 15 S.Ct. 217, 39 L.Ed. 280, or for the statutory liability of a shareholder in a national bank, McDonald v. Thompson, 184 U.S. 71, 22 S.Ct. 297, 46 L.Ed. 437; Rawlings v. Ray, 312 U.S. 96, 61 S.Ct. 473, 85 L.Ed. 605. It would be anomalous, indeed, to hold rights under these important federal laws strictly subject to state limitations, and at the same time to permit the most extreme variation in the bar period for actions to enforce the statutory liability of a shareholder in a federal land bank. Such a divergence in treatment is opposed not only to common sense, but also to the clear implications of the York case. For that case quoted with approval the following statement from the dissenting opinion of Judge A. N. Hand, below: "In my opinion it would be a mischievous practice to disregard state statutes of limitation whenever federal courts think that the result of adopting them may be inequitable. Such procedure would promote the choice of United States rather than of state courts in order to gain the advantage of different laws." York v. Guaranty Trust Co., 2 Cir., 143 F.2d 503, 531.

This principle is true here as in diversity cases. For the assessment authorized by this statute is enforceable in state courts. See Friede v. Jennings, 121 Conn. 220, 184 A. 369; Friede v. Sprout, 294 Mass. 512, 2 N.E.2d 549; In re Christopher's Estate, Ohio App., 35 N.E.2d 454. As we have already pointed out, the New York courts in such a proceeding would naturally apply the ten-year statute, just as Ohio applied its probate statute of nonclaim in the case last cited. To permit a different treatment in the federal courts would therefore constitute an undesirable inroad on the practical policy of uniformity embodied in Erie R. Co. v. Tompkins, supra, to the same extent as the permission of such variation would have been in the York case. Thus the ten-year statute must apply absolutely, and plaintiffs' claim is therefore barred. This in fact was the result reached by the Eighth Circuit in the quite similar case of Ball v. Gibbs, 118 F.2d 958. See also Roos v. Texas Co., 5 Cir., 126 F.2d 767; Overfield v. Pennroad Corp., 3 Cir., 146 F.2d 889.

Reversed for judgment for defendants.