## ANDERSON v. ANDREWS et al.
### No. 9081.

Circuit Court of Appeals, Third Circuit.

Argued May 24, 1946.

Decided Aug. 13, 1946.

Robert S. Marx, of Cincinnati, Ohio (Frank E. Wood, Wm. C. Kelly, and Harry Kasfir, all of Cincinnati, Ohio, and Joseph Marinelli and Vincent C. Veldorale, both of Philadelphia, Pa., on the brief; Nichols, Wood, Marx & Ginter, of Cincinnati, Ohio, of counsel), for appellant.

Harold Evans and John Wintersteen, both of Philadelphia, Pa. (David A. Kerr, of Philadelphia, Pa., on the brief; Ballard Spahr, Andrews & Ingersoll and MacCoy, Brittain, Evans & Lewis, all of Philadelphia, Pa., of counsel), for appellees.

Before GOODRICH and McLAUGHLIN, Circuit Judges, and KALODNER, District Judge.

GOODRICH, Circuit Judge.

This is a suit by the receiver of a defunct national bank to recover against shareholders their liability upon an assessment.[1] The suit was brought against the shareholders in the federal court for

---

[1] This suit by the receiver of a defunct national bank, which was located in Kentucky, was instituted against the shareholders of a Delaware bank-stock

the Eastern District of Pennsylvania. It was begun more than five years and less than six years after the cause of action had accrued.[2] These dates present the significant facts for the application of a rule of law to the one disputed question on this appeal. There is no federal statute of limitations limiting the time in which shareholders' liability in a national bank may be enforced. The local law of limitations, therefore, is applicable.[3] The applicable statute of limitations in Pennsylvania is six years.[4] But Pennsylvania, along with the majority of other states, has a "borrowing" statute.[5] The borrowing provision reads as follows: "When a cause of action has been fully barred by the laws of the state or country in which it arose, such bar shall be a complete defense to an action thereon brought in any of the courts of this Commonwealth."[6]

This moves us to the question in the case.

company (Banco Kentucky Company). Stock of the national bank had been held by trustees. The trustees had issued trust participation certificates in exchange for the national bank stock. The trust participation certificates were exchanged later for stock of the Banco Kentucky Company. The receiver of the national bank had obtained a $4,000,000 judgment against Banco Kentucky Company because of a double liability assessment upon the national bank shares. Laurent v. Anderson, 6 Cir., 1934, 70 F. 2d 819. Some $90,000 was paid upon the judgment by the Banco Kentucky Company. The receiver then instituted personal suits against numerous shareholders of Banco to recover the balance of the $4,000,000 judgment. Anderson v. Abbott, 1944, 321 U.S. 349, 64 S.Ct. 531, 88 L.Ed. 793, 151 A.L.R. 1146, presented a thorough analysis of the corporate relations and established the individual liability of the shareholders of Banco for the assessment upon the national bank stock. We discuss the problem of the instant case, therefore, as though the defendants had been individual shareholders from the outset.

[2] The National Bank of Kentucky failed on November 16, 1930. The United States Comptroller of Currency levied an assessment of $4,000,000 upon the shareholders on February 20, 1931. April 1, 1931 was set by the Comptroller as the final date for payment of the assessment. Rawlings v. Ray, 1941, 312 U.S. 96, 61 S.Ct. 473, 85 L.Ed. 605, decided that the statute of limitations is to run from the date set for payment of the assessment, here April 1, 1931. February 18, 1937 was the date of filing of the instant suit.

[3] When there is no federal statute of limitations and litigation occurs in a federal court the following situations may arise:

a. If the litigation is a law suit, the state statute of limitations of the state where the cause of action arose will govern. Chattanooga Foundry & Pipe Works v. City of Atlanta, 1906, 203 U. S. 390, 27 S.Ct. 65, 51 L.Ed. 241; Campbell v. City of Haverh'll, 1895, 155 U.S. 610, 15 S.Ct. 217, 39 L.Ed. 280.

b. If the litigation is solely in equity the federal courts may adopt similar state equity limitations. Benedict v. City of New York, 1919, 250 U.S. 321, 39 S. Ct. 476, 63 L.Ed. 1005. The federal courts are not bound, however, to adopt state criteria and apply them by analogy. Russell v. Todd, 1940, 309 U.S. 280, 288, n. 1, 60 S.Ct. 527, 84 L.Ed. 754.

c. If litigation is solely in equity and the state wherein the cause of action arose has no analogous equitable action the federal courts will use the doctrine of laches. Speidel v. Henrici, 1887, 120 U.S. 377, 7 S.Ct. 610, 30 L.Ed. 718; Wagner v. Baird, 1849, 7 How. 234, 12 L.Ed. 681.

d. If the litigation in equity is to aid a legal right equity will withhold its remedy if the legal right is barred by a local statute of limitation. Russell v. Todd, 1940, 309 U.S. 280, 289, 60 S.Ct. 527, 84 L.Ed. 754; McDonald v. Thompson, 1902, 184 U.S. 71, 22 S.Ct. 297, 46 L. Ed. 437; Wilson v. Koontz, 1812, 7 Cranch 202, 3 L.Ed. 315.

e. If the litigation involves facts where there is concurrent equity jurisdiction the statute of limitations that bars the legal right also bars recovery in a suit in equity. Guaranty Trust Co. v. York, 1945, 326 U.S. 99, 65 S.Ct. 1464, 89 L. Ed. 2079, 160 A.L.R. 1231; Overfield et al. v. Pennroad Corporation, 3 Cir., 1944, 146 F.2d 889.

[4] "* * * all actions of debt, * * * which shall be sued or brought * * * shall be commenced and sued * * * within six years next after the cause of such actions or suit, and not after. * * * *" Act of March 27, 1713, 1 Sm. L. 96, § 1, 12 P.S. § 31.

[5] See the discussion: Legislation Governing the Applicability of Foreign Statutes of Limitation (1935) 35 Col.L.Rev. 762.

[6] Act of June 26, 1895, P.L. 375, § 1; 12 P.S. § 39.

The Kentucky period of limitations applicable to such an action as this is five years.[7] The national bank, whose shareholders are now being sued, had its principal banking office in the City of Louisville, Kentucky.[8] The defendants say that the Pennsylvania borrowing statute protects them from suit in a federal court in Pennsylvania. The theory of the defense is that this cause of action arose in Kentucky. By the statute of limitations of Kentucky the action was brought too late, it having been commenced, as already stated, more than five years after the liability accrued. The terms of the Pennsylvania borrowing statute, therefore, they say, became applicable and the suit is brought too late here.[9]

The theory upon which the defendants urge that this action arose in Kentucky is something like this. The liability of the shareholders to pay an assessment upon stock is contractual in its nature. This contract was performable at the office of the Receiver at his stated address in the City of Louisville, Kentucky, because that is really where the Receiver's notice to shareholders indicated that payment should be made. The cause of action for breach of contract arises under the law of the place where the promisor had a duty to perform and failed to perform. Since that place was the specified office building in Louisville, the cause of action arose there just as the cause of action in tort would arise under the law of the place of wrong. There are authorities which, applying these borrowing statutes, follow the rules suggested as to the place of claim for breach of contract and tort.[10]

This argument is all right if it is said quickly without parsing it. But we do not think that it is accurate as a matter of legal analysis to say that a shareholder's liability on his stock is contractual.[11] The unfortunate shareholder does not promise to pay a shareholder's liability equal to the par value of his stock if the bank fails. The obligation is imposed on him by law. Perhaps it can be called "quasi contractual" if that helps to distinguish it from liability based upon intentional or negligent misconduct. But this fact does not make a suit to enforce the shareholder's liability the enforcement of a promise made by the shareholder. Nor are we satisfied that when the Receiver named his office as the place where checks could be sent to pay

---

[7] "An action upon a contract not in writing, signed by the party, express or implied; an action upon a liability created by statute, when no other time is fixed by the statute creating the liability * * * shall be commenced within five years next after the cause of action accrued." General Statutes, Chap. 71, Art. III, Sec. 2; Kentucky Revised Statutes, Baldwin's 1930 Revision, Chap. 80, Sec. 2515. This was subsequently changed in form to read: "Actions to be brought within five years. The following actions shall be commenced within five years after the cause of action accrued:

"(1) An action upon a contract not in writing, expressed or implied.

"(2) An action upon a liability created by statute, when no other time is fixed by the statute creating the liability. * * *" Kentucky Revised Statutes, Sec. 413.120 (2nd Ed., 1944).

[8] It had ceased to do business at the time the assessment upon shareholders was made.

[9] Note that the Pennsylvania borrowing statute provides a defense to an action "brought in any of the courts of this Commonwealth." It could be urged, perhaps, that the borrowing statute is, by its terms, not applicable because the United States District Court is not a court of the Commonwealth of Pennsylvania. We make nothing of this point, however, because we think the case ought to be settled on the broader ground than verbal hair-splitting.

[10] Cases involving breach of contract: Auglaize Box Board Co. v. Kansas City Fibre Box Co., 6 Cir., 1930, 35 F.2d 822, certiorari denied 1930, 281 U.S. 730, 50 S.Ct. 247, 74 L.Ed. 1147; Pond Creek Mill & Elevator Co. v. Clark, 7 Cir., 1920, 270 F. 482. Case involving a tort: Baltimore & Ohio RR. Co. v. Reed, 6 Cir., 1915, 223 F. 689, certiorari denied, 1915, 239 U.S. 640, 36 S.Ct. 160, 60 L.Ed. 481. Notes, 1931, 75 A.L.R. 211; Restatement, Conflict of Laws (1934) § 604, comment b; 11 Am.Jur., Conflict of Laws, § 197; Goodrich, Conflict of Laws, 2d Ed. 1938, 202.

[11] McClaine v. Rankin, 1905, 197 U.S. 154, 161, 25 S.Ct. 410, 49 L.Ed. 702, 3 Ann.Cas. 500; McDonald v. Thompson, 1902, 184 U.S. 71, 73, 74, 22 S.Ct. 297, 46 L.Ed. 437.

this assessment that this made the office the "place of performance". The recipient of the payment was really not the Receiver but the Comptroller General of the United States who, obviously, is not located in Kentucky.[12] Even on defendants own theory, therefore, we find it hard to see that the facts of their case fit the legal rule on which they base immunity.

There is a wider ground, however, on which we think the defendants are wrong and which compels a reversal of the judgment of the District Court. The approach, we think, is found in the language of Mr. Justice Frankfurter speaking for the Court in Holmberg et al. v. Armbrecht, et al., 66 S.Ct. 582, 584. In the case which involved liability of shareholders in the Southern Minnesota Joint Stock Land Bank he said: "We do not have the duty of a federal court, sitting as it were as a court of State, to approximate as closely as may be State law in order to vindicate without discrimination a right derived solely from a State. We have the duty of federal courts, sitting as national courts throughout the country, to apply their own principles in enforcing an equitable right created by Congress." In our case the liability imposed upon the shareholders of national banks for the benefits of their creditors is not a state created right, but one created by United States statute. The liability extends to all shareholders regardless of the state where the bank has its principle place of business and regardless of where shareholders live. In dealing with it the rules applicable are not those in which a federal court, sitting in a diversity case, applies state law as accurately as it can. It is, rather, one of those instances where federal courts are enforcing rights arising out of transactions governed by the federal government acting within its constitutional field. Ordinary state rules of law are not applicable to create or to limit the claim.[13] We think, therefore, that this is not the kind of cause of action which is properly described as arising within the State of Kentucky. It did not arise there any more than it did in any other one of the states of the United States.[14] We conclude, therefore, that the borrowing provision of the Pennsylvania statute of limitations is not applicable. It is not disputed that the action is timely brought unless the borrowing statute may be availed of to bar it. The conclusion necessarily follows, therefore, that it may be maintained, so far as the time element is concerned and this is the only point up for our decision at this time.

In reaching this conclusion we are quite conscious that we are in disagreement with our brethren of the Sixth Circuit in the decision they reached in Helmers et al. v. Anderson, 6 Cir., 1946, 156 F.2d 47, a case decided since the submission of the one at bar. We have read the carefully prepared opinion in that case, but are still constrained to follow the view of the matter which we have expressed above.

The judgment of the District Court is reversed and the case remanded for further proceedings in conformity with this opinion.

---

[12] Whenever the Comptroller becomes satisfied of the insolvency of a national bank he has the statutory power to appoint a receiver. 19 Stat. 63 (1876), 12 U.S.C.A. § 191. The receiver is the representative of the Comptroller. United States v. Weitzel, 1918, 246 U.S. 533, 541, 38 S.Ct. 381, 62 L.Ed. 872; Lehman v. Spurway, 5 Cir., 1932, 58 F.2d 227, 228. The receiver is under the direction of the Comptroller and may enforce individual liability and is charged with the duty to pay all money over to the Treasurer of the United States, subject to the order of the Comptroller. 13 Stat. 114 (1864), 12 U.S.C.A. § 192.

[13] Cf. Herget, Trustee in Bankruptcy v. Central National Bank & Trust Co., 1945, 324 U.S. 4, 9, 65 S.Ct. 505, 89 L. Ed. 656. Accord, D'Oench, Duhme & Co., Inc. v. Federal Deposit Insurance Corporation, 1942, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956. Note especially Mr. Justice Jackson's concurring opinion at pages 465–475 of 315 U.S., and at pages 683–688, of 62 S.Ct.

[14] It is, of course, true that statutes passed within constitutional authority by the Congress become a part of "the law" in Kentucky and in other states because the laws of the United States become "the supreme law of the land".