QUESTIONS: 1. Do federal law and regulations require the state to offer its employees the option of health maintenance organization membership as an alternate to the state insurance program provided pursuant to s. 112.075, F. S.? 2. If the above question is answered in the affirmative, can and must the state pay to a federally qualified health organization chosen by an employee the sum equal to the state insurance contribution provided by s. 112.075, F. S.?
SUMMARY: The State of Florida or any agency thereof is required to offer its employees the option of membership in a qualified health maintenance organization engaged in the provision of basic and supplemental health service in the area in which such employees reside as an alternative to the state insurance program provided pursuant to s. 112.075, F. S., due to the requirements of federal law and regulations embodied in Title 42 U.S.C.A. 300e et seq. (Public Law 93-222), and C.F.R. Title 42, Ch. 1, Part 110, Subpart H, Rules 110.801-110.808 as published in the federal register Vol. 40, No. 208, and is required to pay to such a federally qualified health maintenance organization chosen by an employee a sum equal in amount to the state insurance contribution provided by s. 112.075. In your letter you advise: It is asserted to us that the provisions of s. 112.075 are required by Federal law to be made equally applicable to an employee who chooses membership in a health maintenance organization as an alternate to the state insurance plan. Among the Federal provisions asserted to be applicable are Title XIII of the Public Health Service Act, (42 U.S.C. § 300e et seq.), as added by the Health Maintenance Organization Act of 1973, Public Law 93-222, (especially Section 1310) and C.F.R. Title 42, Chapter 1, Part 110, Subpart H. Rules 110.801-110.808, as published in the Federal Register, Vol. 40, No. 208, for Tuesday, October 28, 1975, pages 50212-50216. However, before taking any action in the matter, we feel that the advice of your office is necessary. Question 1 is answered in the affirmative. Question 2 is answered in the affirmative subject to the discussion which follows. Section 112.075, F. S., is the State Officers and Employees Group Insurance Program Law. Section 112.075(1)(b) states that the purpose of the law is to authorize a group life, health, and accident insurance benefit program for all state officers and all full-time state employees holding salaried positions. Section 112.075(2) defines "full-time state employees holding salaried positions." Section 112.075(3)(b)4. provides that the group insurance program "shall be uniformly available to all state officers and full-time state employees holding salaried positions." The Secretary of Administration is responsible for the administration of the group insurance program, s. 112.075(4), and the Department of Insurance has the duty of determining that insurance carriers desiring to bid for the insurance to be offered are fully qualified, financially sound, and capable of meeting all servicing requirements. Section 112.075(3)(b)3. Section 112.075(5) mandates that participation in the state group insurance program by any state officer or employee shall at all times be voluntary under the rules and procedures prescribed by the Department of Administration. Section 112.075(7), F. S., provides the authority for the payment by state agencies, from any funds made available for such purposes, of 75 percent of the cost of the individual coverage of each officer or employee participating in the state insurance program. Section 112.075(7)(d) provides: No state or agency funds shall be contributed by any state agency toward the premium cost of any group health insurance program unless said program is established pursuant to the provisions of this section. The mandate of the above-quoted paragraph and the other provisions of s. 112.075 must be examined in light of federal law to determine if federal law requires the state to offer its employees the option of health maintenance organization membership as an alternative to the state insurance program and to determine if state or agency funds are required to be contributed toward the dues or premium costs of such state employees for participating in a health maintenance organization. Public Law 93-222, enacted December 29, 1973, created what is commonly referred to as the "Health Maintenance Organization Act of 1973." Said law is now embodied in Title 42 U.S.C.A. s. 300e-9, et seq. Section 300e-9(a) provides: (a) Each employer which is required during any calendar quarter to pay its employees the minimum wage specified by section 206 of Title 29 (or would be required to pay his employees such wage but for section 213(a) of Title 29), and which during such calendar quarter employed an average number of employees of not less than twenty-five, shall, in accordance with regulations which the Secretary shall prescribe, include in any health benefits plan offered to its employees in the calendar year beginning after such calendar quarter the option of membership in qualified health maintenance organizations which are engaged in the provision of basic and supplemental health services in the areas in which such employees reside. (Emphasis supplied.) It is this federal law which requires that the option of membership in qualified health maintenance organizations be offered by any employer required by Title 29 U.S.C.A., s. 206, which is s. 6 of the Fair Labor Standards Act of 1938, to pay its employees the minimum wage specified therein. Title 29 U.S.C.A., s. 206, provides in part: (a) Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce wages at the following rates . . . . (Emphasis supplied.) Thus we must determine if the State of Florida is an "employer" as defined by the Fair Labor Standards Act, as amended. Examination of s. 203(d) reveals that, originally, a state was excluded from the definition of "employer" as defined therein. However, the section was amended by Public Law 89-601, s. 203(d), to define employer as follows: "Employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization. (Emphasis supplied.) "Public agency" is defined in s. 203(x) as follows: "Public agency" means the Government of the United States; the government of a State or political subdivision thereof; any agency of the United States (including the United States Postal Service and Postal Rate Commission), a State or a political subdivision of a State; or any interstate governmental agency. (Emphasis supplied.) Thus it can be seen that a state or any agency of a state is squarely within the definition of a "public agency" and accordingly would be an "employer" as defined in Title 29 U.S.C.A. s. 203(d). Thus, the state or its agencies would be an "employer" within the purview of Title 42 U.S.C.A. s. 300e-9, previously quoted herein, and would be required to offer the option provided for therein. An examination of the Federal Register, Vol. 40, No. 208, reveals that the rules and regulations adopted thereunder, Title 42, Ch. 1, Part 110, Subpart H in s. 110.801, define "employer" as follows: (a) "Employer" shall have the same meaning as that given such term in Section 3(d) of the Fair Labor Standards Act of 1933, as amended, (29 U.S.C.A. s. 203). As can be seen, the rule defines "employer" in substantially the same manner as the word is defined in Title 42 U.S.C.A. s. 300e-9. Section 110.802 provides in part: (a) The regulations of this subpart apply in each calendar year to each employer which: (1) Was required during any calendar quarter of the previous calendar year to pay its employees the minimum wage specified by Section 6 of the Fair Labor Standards Act of 1938 (or would have been required to pay its employees such wage but for section 13(a) of such Act) . . . . (Emphasis supplied.) This rule likewise makes it crystal clear that an employer required to comply with s. 6 of the Fair Labor Standards Act of 1938, as amended, which would include the state, is within the purview of the "Health Maintenance Organization Act of 1973." Section 110.803(a) of the Rules provides: An employer subject to s. 110.802 shall, at the time a health benefits plan is offered to its eligible employees or to such employees and their eligible dependents, include in such plan the option of membership in qualified health maintenance organizations in accordance with the provisions of this section. (Emphasis supplied.) This rule generally tracks the statute it implements. A state would be within the purview of the rule and the statute because the state would be an employer subject to s. 110.802, previously quoted herein. Thus it is clear that the State of Florida, being an employer as defined in Title 29 U.S.C.A. s. 203(d), the Fair Labor Standards Act, would be an "employer" as that term is used in Title 42 U.S.C.A. s. 300e-9, and accordingly would be required to offer its employees the option of membership in qualified health maintenance organizations which are engaged in the provision of basic and supplemental health service in the areas in which such employees reside. Inasmuch as s. 112.075, F. S., the State Officers and Employees Group Insurance Program Law, reaches both state officers and employees, it is necessary to consider the term "employee" as defined in Title 29 U.S.C.A. s. 203(e). Where referring to employees of a state or political subdivision of a state, said section provides in s. 203(e)(2) in part: (e)(1) Except as provided in paragraphs (2) and (3), the term "employee" means any individual employed by an employer. (2) In the case of an individual employed by a public agency, such term means . . . * * * * * (c) any individual employed by a State, political subdivision of a State or an interstate governmental agency, other than such an individual . . . (i) who is not subject to the civil service laws of the State, political subdivision, or agency which employs him; and (ii) who . . . (I) holds a public elective office of that State, political subdivision, or agency, (II) is selected by the holder of such an office to be a member of his personal staff, (III) is appointed by such an officeholder to serve on a policymaking level, or (IV) who is an immediate adviser to such an officeholder with respect to the constitutional or legal powers of his office. (Emphasis supplied.) As can be noted, the provision excludes the individuals described above from the definition of "employee." Included in the exclusion are individuals employed by a state, or political subdivision of a state, who are not subject to the civil service laws of the state, political subdivision or agency which employs him; an individual who holds a public elected office of that state, political subdivision or agency; an individual who is selected by the holder of such an office to be a member of his personal staff; an individual who is appointed by such an officeholder to serve on a policymaking level; and an individual who is an immediate adviser to such an officeholder with respect to the constitutional or legal powers of his office. Since the thrust of Public Law 93-222
is for the purpose of reaching employers and employees under the Fair Labor Standards Act, it seems clear that the excluded described individuals, not being employees within the purview of the Fair Labor Standards Act of 1938, would not be required to be offered the option of membership in health maintenance organizations as an alternate to state insurance. This seems the logical and natural result of the language found in s. 300- 9(a). The language of the provision commences by referring to each employer required to pay its employees the minimum wage specified by s. 206, and concludes by requiring that such employer shall include in any health benefits plan offered to its employees the option of membership in qualified health maintenance organizations. Therefore, it seems clear that only those employees covered under the Fair Labor Standards Act of 1938 would be required to be offered such option. The thrust of the law seems designed to reach employees protected by the Fair Labor Standards Act of 1938. An examination of Public Law 93-222, the Health Maintenance Organization Act of 1973, reveals that the term "employee" is not defined therein although it is covered by the regulations in s. 110.801(c) wherein it is defined to mean "any individual employed by an employer whether on a full or part-time basis." As compared to the definition of "employer" found in s. 110.801(a) of the regulations, it is noted that the regulations specifically define "employer" to have the same meaning as that given in s. 3(d) of the Fair Labor Standards Act of 1938, as amended. Although "employee" is not defined in the regulations in relation to the definition of "employee" in the Fair Labor Standards Act of 1938 in the manner in which the term "employer" is so defined, in light of the overall thrust and purpose of Public Law 93-222, it is my opinion that employees excluded from the definition of the term "employee" of the Fair Labor Standards Act would not be required to be offered the option of membership in a health maintenance organization. This answers question number 1. Next to be considered is question number 2 which is also answered in the affirmative subject to the following discussion. Title 42 U.S.C.A. s. 300e-9(c) provides: No employer shall be required to pay more for health benefits as a result of the application of this section than would otherwise be required by any prevailing collective bargaining agreement or other legally enforceable contract for the provision of health benefits between the employer and its employees. Failure of any employer to comply with the requirements of subsection (a) of this section shall be considered a willful violation of section 215 of Title 29. (Emphasis supplied.) This section protects an employer from being required to pay more for health benefits as a result of the requirements of s. 300e-9 than such employer would otherwise be required to pay by any prevailing collective agreement or other legally enforceable contract for the provision of health benefits between the employer and its employees and also imposes a penalty on an employer for failing to comply with the requirements of the section. Rules and regulations have also been adopted pursuant to this provision. Section 110.807 provides in part: (a) The health maintenance organization alternative shall be included in the health benefits plan on terms no less favorable in regard to an employer's monetary contribution or designee's cost for health benefits, than those on which the other alternatives in the health benefits plan are included: Provided, That the employer shall not be required to pay more for health benefits as a result of offering the option of membership in qualified health maintenance organizations than such employer would otherwise be required to pay for health benefits by a collective bargaining agreement or other employer-employee contract in effect at the time that the health maintenance organization is included in the health benefits plans. (b) The amount of the employer's or designee's contribution shall be determined in a manner consistent with this section. (Emphasis supplied.) This rule is consistent with Title 42 U.S.C.A. s. 300e-9(c) and protects the employer from being required to pay for health benefits in excess of those the employer would otherwise be required to pay. "Employer-employee" contract is defined in s. 110.801(m) as follows: "Employer-employee contract" means a legally enforceable agreement (other than a collective bargaining agreement) between an employer and its employees for the provision of, or payment for, health benefits for its employees, or for such employees and their eligible dependents. (Emphasis supplied.) In the instant case, s. 112.075, F. S., would be considered as the "employer-employee" contract within the purview of the federal law and regulations. The amount of the state's contribution would be determined in the manner set forth in s. 110.807 of the Rules and in the instant situation would be that amount established by s. 112.075(7)(a), F. S. This is recognized in Rule s. 110.807(c) as follows: Where the specific amount of the employer's contribution for health benefits is fixed by a collective bargaining agreement, by an employer-employee contract, or by law, the amount so determined shall constitute the employer's obligation for contribution toward the health maintenance organization dues or premiums on behalf of eligible employees or such employees and their eligible dependents. (Emphasis supplied.) The "Health Maintenance Organization Act of 1973" is clearly and specifically designed to reach all employers as that term is defined in the Fair Labor Standards Act of 1938, as amended. States have been clearly unequivocally brought within the purview of said Act. The mandate of the "Health Maintenance Organization Act of 1973" is to require that all such employers within the purview of the Fair Labor Standards Act of 1938, as amended, offer their employees the option of membership in qualified health maintenance organizations which are engaged in the provision of basic and supplemental health service in the areas in which such employees reside. In the face of such clear and unequivocal mandate, the restrictions found in s. 112.075(7)(d), F. S., must yield. The effect of the federal law and its requirements is to lift the restriction of the use of state or agency funds allowed to be contributed toward the premium costs of any group health insurance program, unless one or the other, but not both programs are established pursuant to the provisions of s. 112.075, F. S., and to authorize and require the use of such funds toward the dues or premium costs of membership opted for by state employees in qualified health maintenance organizations which are engaged in the provision of basic and supplemental health service in the areas in which such employees reside. This is so by virtue of the Supremacy Clause of the Federal Constitution, Art. 6, Clause 2, of the United States Constitution. The effect of the Supremacy Clause of the United States Constitution is well settled. It has been stated that the Constitution and laws of the United States extend and are paramount over all the territory of every state and cannot be annulled, nor the force of either of them be in any degree impaired by any law of the state no matter in what form or with what solemnity such law may have been enacted, or by what name it may be designated, whether it be a constitution, an ordinance, a statute, or a resolution, and so far as it conflicts with the Constitution or with any valid law of the United States, it is utterly nugatory and can afford no legal protection whatever to those who act under it. (Charge of grand jury, D.C. Mass., 1861, at Sprague, U.S. 602, 30 Fed. Case No. 18,273; also see Public Utilities Commission of State of California v. United States,355 U.S. 534 (1958), rehearing denied, 356 U.S. 925.) This doctrine was recognized by the courts of the State of Florida in the cases of United States v. Carter, 121 So.2d 433 (Fla. 1960), and Montgomery v. State, 45 So. 879 (Fla. 1908). It has also been stated that statutes within the constitutional authorization of Congress become part of the law of the several states because the laws of the United States are the supreme law of the land. Anderson v. Andrews, 156 F.2d 972 (3rd Cir. 1946), reversed on other grounds, 331 U.S. 461. A state law cannot stand which either frustrates the purpose of national legislation or impairs the efficiency of those agencies of federal government to discharge the duties for the performance of which they were created. (Nash v. Florida Industrial Commission, 389 U.S. 235 [1969].) No state government can exclude the government of the United States from the exercise of any authority conferred upon it by the Constitution, obstruct its authoritative officers against its will, or withhold from it for a moment the cognizance of any subject which that instrument has committed to it. Tennessee v. Davis, 100 U.S. 257 (1879). The states are devoid of power to retard, impede, burden, or in any measure control the operations of the Constitutional laws enacted by Congress to carry into execution the powers vested in the general government. Nash v. Florida Industrial Commission, supra. See same case at205 So.2d 700. A state statute is in conflict with a federal statute when one may incur the penalty of the federal statute by obeying the state statute or vice versa, American Federation of Labor v. Watson, 60 F. Supp. 1010 (Fla. 1945), reversed on other grounds,327 U.S. 582. The Supremacy Doctrine also applies to federal regulations. Free v. Bland, 369 U.S. 663 (1962). The Supremacy Doctrine has even allowed a federal court to reach the Governor of the State of Florida through an order to show cause why he should not be held in contempt for interfering with a court order. See Harvest v. Board of Public Instruction of Manatee County,312 F. Supp. 269 (Fla. 1970). Thus it is quite clear that the mandates of the federal law involved herein and the federal regulations implementing said law must be complied with.