## Noonan v. McGuire (No. 2)

*Charles E. Kenworthey, Walter T. McGough, Ellsworth Jordan, Milton W. Lamproplos* and *Leonard A. Mazer,* for plaintiffs.

*Rose, Rose & Houston,* for defendant.

ELLENBOGEN, J., June 5, 1956.—The question before us is whether we shall grant the motion of counsel for a number of plaintiffs to direct John A. McGuire, defendant, in connection with his cross-examination, to produce copies of his Federal income tax returns for the years 1950 through 1953, inclusive. This motion was opposed by Mr. McGuire on the following grounds:

1. That the income tax returns are privileged and that the court has no power to direct the production of copies thereof.

2. That they are not relevant.

3. That there is no authority to compel their production in this manner.

As to the question of relevancy, information contained in the income tax returns of defendant, John A. McGuire, for the years 1951, 1952 and 1953 is relevant to the issues involved in this case. The return for 1950 is not relevant. The form of the motion is not improper. There remains the question whether the returns are "privileged".

Counsel for McGuire and counsel for plaintiffs presented verbal arguments and filed written briefs in support of their respective positions.

We have carefully read the briefs and the cases cited therein.

The question before us is a novel one. It is a case of first impression in Pennsylvania. There appears to be no case in Pennsylvania either in the lower courts or in the appellate courts which adjudicates the question before us.

The Internal Revenue Code of 1939, as amended, 53 Stat. 29, applicable to the pertinent period, provides that: "Returns made under this chapter . . . shall constitute public records; but, except as hereinafter provided in this section, they shall be open to inspection only upon order of the President . . .": 26 U. S. C. §55(*a*). Section 55(*b*)(1) provides that: "The proper officers of any State may, upon the request of the governor thereof, have access to the returns of any corporation, or to an abstract thereof . . .". Section 55(*b*)(2) provides that all income tax returns shall be open to inspection by any State official, body or commission, "lawfully charged with the administration of any State tax law, . . .". In Section 55(*c*) it is provided that shareholders of record holding one percent or more of the oustanding stock of any corporation shall be allowed to examine the annual income returns of such corporation and of its subsidiaries.

Section 55(*d*)(1) and (2) provides that specified committees of the United States House of Representatives and Senate shall have access to the data contained in the return and shall have the right, "acting directly as a committee, or by or through such examiners or agents as it may designate or appoint, to inspect any or all of the returns at such times and in such manner as it may determine".

Similar provisions are contained under the Internal Revenue Code of 1954, C. 736, 68 A Stat. 753, 26 U. S. C. §6103.

The promulgated treasury regulations, 26 Code Fed. Reg. Cum. Supp. sec. 458.302, p. 8401, provide that the return of an individual shall be open to inspection by the person who made the return or by his duly constituted attorney in fact. The same regulations also provide in section 485.505, p. 8409, that copies or certified copies of a return may be obtained by any person entitled to inspect such return upon the payment of a reasonable fee for such copies.

Section 55 (f) (1) contains the penalty clause. It provides that it shall be unlawful "for any collector, deputy collector, . . . to permit any income return or copy thereof . . . to be seen or examined by any person except as provided by law" and prohibits the unlawful printing of such information.

There is no provision in the Internal Revenue Code stating that income tax returns are "privileged" or that they constitute a "confidential communication", as is said in some of the cases, To the contrary, the code specifically provides that the return shall be open to inspection (1) upon order of the President, (2) to specified committees of both Houses of the U. S. Congress and, in the case of corporations, (3) upon request of proper State officers, or (4) of proper State taxing bodies, and (5) upon the request of shareholders of record owning one percent or more of the outstanding stock of the corporation.

A return which is open to so many agencies and persons and may be made available upon order of the President, apparently in any instance which the President deems proper, can hardly be called "confidential" and only in a very limited sense "privileged". If the Congress intended that income tax returns should be privileged or should have the status of confidential

communications, similar to those between attorney and client, or Federal or State courts should not, in proper cases, have the right to direct production of copies thereof, it could, and we may assume would, have so provided. Requests for the production of income tax returns have been made frequently over a number of years. Courts have directed the production of these records for some years, but Congress has not seen fit to prohibit the courts from doing so.

Neither the Act of Congress nor the general principles of law or legal philosophy suggest a holding that income tax returns are privileged or confidential. Sound public policy requires a contrary ruling.

Our entire legal system rests upon the foundation of truth. The whole legal procedure, the liberal provisions for discovery and for extensive cross-examination and many other provisions, too many to be enumerated here, are designed to facilitate the discovery of the truth in a law suit and to assure that the case be decided upon the true facts. False income tax returns are subject to penalties prescribed by the act of Congress. The production of copies of such returns would therefore be a potent weapon in the determination of the true facts in a law suit.

The point may be made that income tax returns are not voluntary declarations, that every person must file a return under compulsion of Federal law, and that he must make a true return, if he is to safeguard himself from the penalties provided by law. Thus, it may be urged that to compel a party to a law suit to produce his income tax return is equivalent to compelling him to give testimony which may be against his own interest. This would be a valid objection in a criminal case, or if the production of a copy of the income tax return would tend to incriminate the witness. Under the Federal Bill of Rights and under the Bill of

Rights of the Constitution of Pennsylvania, no person can be compelled to incriminate himself.

It is well established that except where there is a proper plea of self-incrimination, a party to a civil case may be called for cross-examination, and may be compelled under the penalty of perjury to testify. He may also be compelled to produce all the books, records, memoranda; writing and any other data which he has in his possession which are relevant to the issues involved, even though such data, books and records may be damaging to his side of the case: Evidence Act of May 23, 1887, P. L. 158, sec. 7; Act of March 30, 1911, P. L. 35, 28 PS §381; Pa. R. C. P. 4009(1), 5 Anderson, Pa. Civ. Prac. p. 220. Such is the law not only in Pennsylvania, but is the law in other State jurisdictions and in the Federal courts: 70 C. J. 604 §778.

The authorities on the question before us are few and are in conflict, but the weight of authority and the better reasoning support a ruling directing defendant to produce copies of his income tax returns for relevant years.

In the case of Paramount Film Distributing Corp. v. Ram, 91 F. Supp. 778, U. S. Dist. Ct. E. D. South Carolina (1950), Chief Judge Wyche directed defendants to produce "and permit inspection, copying and photographing by the attorneys for the plaintiffs, or the agents of said attorneys . . ."; inter alia, of "copies of federal income and admission tax returns and accompanying schedules and work sheets; . . .". The court there said, page 781:

"Copies of tax returns have been held not to be privileged. In Connecticut Importing Co. v. Continental Distilling Corp., D. C., 1 R. F. D. 190, 191, a motion was made by defendant for permission to inspect copies of the plaintiff's income tax returns. The court granted the motion '. . . upon the ground that the copies, although constituting communications from

the taxpayer to the government, are nevertheless without privilege either by common law or under statute.' See also, Judson v. Buckley, D. C., 31 F. Supp. 246; Welch v. C. G. Johnson Electrical Construction Co., Inc., Orange County Theatres v. Levy, D. C., 26 F. Supp. 416; Fidelity & Casualty Co. v. Tar Asphalt Trucking Co., D. C., 30 F. Supp. 216."

In June v. George C. Peterson Co., 155 F. 2d 963 (1946), the Seventh Circuit Court of Appeals reversed the district court and directed that copies of income tax returns be produced by defendant. In Connecticut Importing Co. v. Continental Distilling Corp., 1 F. R. D. 190 (1940), the district court, D. of Connecticut, held that: "A claim of privilege with respect to federal income tax returns under the Fourth Amendment could not be made in a civil action", and directed plaintiff to produce its income tax returns for the inspection of defendant. The court there said, pages 191-192:

"The motion [to produce] is granted rather upon the ground that the copies, although constituting communications from the taxpayer to the government, are nevertheless without privilege either by common law or under statute. . . .

"In sec. 2377, Wigmore points out that with respect to 'matters required by law to be reported to some administrative official', there has been 'a modern creation of a number of privileges, all statutory in origin'. (Citing as one illustration the limited privilege created by the Federal income tax law.) Since, as pointed out, the privilege is statutory only, we must look to the statutes for the dimensions of the privilege thus created.

"The only statute pertinent here is that now consolidated as 26 U. S. C. A. Int. Rev. Code, §55. Nothing in this statute nor the regulations issued thereunder precludes a court of competent jurisdiction from requir-

ing a disclosure of a tax return by the taxpayer in connection with civil litigation to which the taxpayer is a party.

"The statutory privilege is limited to the prohibition of disclosures by officers of the government; and it is further limited by specified exceptions whereby under specified circumstances even government officials may disclose the communications. And the courts, when once satisfied that a given case falls outside the statutory privilege, refuse to recognize any privilege whatever and accord to the communication such admissibility as it would under the controlling law of evidence. In re Epstein, 6 Cir., 4 F. 2d 529; Lewy v. United States, 7 Cir., 29 F. 2d 462, 62 A. L. R. 388. Cf. Witters v. Sowles, Ex'r., C. C., 32 F. 130; In re Hines, 2 Cir., 69 F. 2d 52. In Corliss v. United States, 8 Cir., 7 F. 2d 455, copies of tax returns were held inadmissible not because of a claimed privilege, but because under the law of evidence no basis there existed for the use of copies in lieu of originals. And from Greenbaum v. United States, 9 Cir., 80 F. 2d 113, it is further apparent that income tax returns in a case not within the limited statutory privilege have a status no different from other items of evidence.

"Here there is no claim of privilege under the Fourth Amendment; this being a civil action, there is no room for such a claim. The motion is not in conflict with the only pertinent statute, as we have seen. The only question is whether the matter in its other aspects lies under Rule 34, Rules of Civil Procedure for District Courts, 28 U. S. C. A. following section 723c. . . ."

Nola Electric, Inc., v. Reilly, 11 F. R. D. 103 (1950), U. S. District Ct. S. D. New York, is a strong and well considered case in support of the motion before us. Defendant argued that the documents are privileged communication, and since they were not in his possession, were beyond defendant's "possession, custody,

or control". The argument was overruled and the district court, on motion of plaintiff, directed defendant, who alleged that he did not have copies of income tax returns in his possession, to apply to the Commissioner of Internal Revenue for copies and "upon obtaining them, produce them for the plaintiff's inspection and copying". The court there said, on page 105-106:

"Correspondence and material filed with the Bureau of Internal Revenue of the character now under consideration are deemed 'confidential' by the Commissioner and copies of them are furnished only to and upon the request of the writer of the document. The fundamental question is whether this policy is adopted as a means of security for the Bureau's records, and avoiding possible embarrassment to it from indiscriminate access to the records and undesirable exploitation of the information and material so obtained, or is founded upon the public interest to remove any impediment so that the Government may more readily obtain information which it desires. . . .

". . . although income tax returns are classified as 'public records,' 26 U. S. C. A. §55(a), the administrative regulations do not allow third parties to have access to them, but permit inspection by the maker of the return or his representative. See 26 C. F. R. §458.50 et seq. Nevertheless, copies of income tax returns are not, by most courts, held 'privileged', Connecticut Importing Co. v. Continental Distilling Corp., D. C. 1 F. R. D. 190; Judson v. Buckley,* Volk v. Paramount Pictures,* Contra: O'Donnell v. Olsen & Ugelstadt, D. C., 10 F.R.D. 142, and a party can be compelled to secure a copy from the Internal Revenue authorities. Reeves v. Pennsylvania R. Co., D. C., 80 F. Supp. 107; cf. The Sultana, D. C., 77 F. Supp. 287; see In re Hines, 2 Cir., 69 F. 2d 52. . . .

---

\* No opinion for publication.

"I think that the copies of the papers in question are within the 'control' of the defendant, for it appears that they will be furnished to the defendant by the Commissioner if the defendant requests them. The decision in Reeves v. Pennsylvania R. Co., supra, is directly in point and I agree with what is there said, in which it was held in connection with income tax returns, that where the Government has permitted the documents to be open to the taxpayer for inspection and copying, he has 'such a potential right to the custody or control of the copies as to require production of such copies'. 80 F. Supp. at page 109."

In Reeves v. Pennsylvania Railroad Co., 80 F. Supp. 107, U. S. District Court, Delaware (1948), it was held that: "If a party has retained copies of his income tax returns, production thereof can be required under rule 34 dealing with discovery" and a party who has not retained copies of his income tax returns can be required to obtain and to produce those copies. The court there said, page 108-109:

"Having in mind the broad and liberal purposes of the discovery process provided by Rule 34 and that copies of the income tax returns retained by the taxpayer are subject to production under the Rule and that the taxpayer alone has the right to inspect filed returns and obtain copies thereof, I am of the opinion that the taxpayer retains such a potential right to the custody or control of the copies as to require production of such copies. The potential right to the custody and control of the copies may be converted into an actual custody and control solely upon the exercise of the option of the taxpayer. If the copies were not required to be obtained and produced and such copies could not be obtained by any one other than the taxpayer, then a taxpayer who retained no copies or who destroyed copies would be in an immeasurably better position than the careful person who retained such

copies. The exact situation was passed upon under Admiralty Rule 32, 28 U. S. C. A., which is in identical language as original Rule 34 of the Rules of Civil Procedure. In The Sultana, D. C. W. D. N. Y. 1948, 77 F. Supp. 287, 288, copies of income tax returns had not been retained, but the taxpayer was ordered to inspect the returns as filed and obtain copies thereof and produce the same under the rule."

In The Sultana, 77 F. Supp. 287, Dist. Ct. W. D. New York (1948), a suit in admiralty, libellant was required to produce income tax returns and, as to income tax returns not in his possession, he was directed to secure certified copies thereof " 'and produce the same and permit the inspection and copying or photographing thereof by or on behalf of the claimant'. . . ."

There are cases that hold the contrary view. They hold that the Internal Revenue statute creates a privilege and gives income tax returns a privileged status as a "confidential communication", similar to that of communications between attorney and client. Such is the ruling of Judge Youngdahl, U. S. District Court, D. C., in the case of Maddox v. Wright, 103 F. Supp. 400, D. C. Dist. Col. (1952). Judge Youngdahl quotes with approval from O'Connell v. Olsen & Ugelstadt, 10 F. R. D. 142, 143, as follows:

" 'The Internal Revenue Code, 26 U.S.C.A. §55, and regulations issued thereunder provide that tax returns shall be confidential and disclosed only upon application of the plaintiff or his attorney in fact. No provision is made for the production of such returns upon order of a Federal Court. Until such provision is made, this section of the Court has been and is of the opinion that such returns are, in private civil actions, confidential information between the taxpayer and the Government and should not be open to inspection under Rule 34, Federal Rules of Civil Procedure, 28

U.S.C.A. Such a ruling is in accord with previous holdings that documents which have been declared confidential by Federal department rulings are not open to discovery under Rule 34. 2 Moore's Federal Practice, 2641, F.N. 1.' "

Judge Youngdahl vacated a subpoena duces tecum requiring the production of the income tax returns.

In United Motion Theatre Company v. Ealand, 199 F. 2d 371, (1952), the Sixth Circuit Court of Appeals in a memorandum per curiam opinion vacated an order directing the production of copies of income tax returns. The force of this decision is weakened by the fact that as the report shows, counsel for the appellee did not appear at the hearing of the appeal and no brief was filed in behalf of the appellee. This memorandum opinion cites Hickman v. Taylor, 329 U. S. 495, 507, 67 S. Ct. 385, 91 L. Ed., 451; Annotation 8 A.L.R. 2d 1134; Garrett v. Faust, D.C., 8 F.R.D. 556; Welty v. Clute, D. C., 2 F.R.D. 429; O'Connell v. Olsen & Ugelstadt, D. C., 10 F.R.D. 142.

Hickman v Taylor, 329 U. S. 495 (1946), cited in support of the ruling of the Sixth Circuit Court of Appeals, lends no support to such ruling.

The next authority cited in the United Motion Theatre Company case is Garrett v. Faust, 8 F.R.D. 556 (1949). In that case Judge McGranery, then a District Judge of the U. S. District Court, Eastern District of Pennsylvania (later Attorney General of the United States), denied a motion under Federal Rules of Civil Procedure, Rule 34, 28 U.S.C.A., to require defendants to produce copies of their income tax returns for certain specified years. He did so on the basis that these documents were not "in any way material to any matter involved in the action . . . that plaintiffs have not shown any necessity for their production or 'any indication or claim that denial of such

production would unduly prejudice the preparation of petitioner's case or cause him any hardship or injustice.' "

In Welty v. Clute, D. C., 2 F.R.D. 429, the next case cited in the United Motion Theatre Company case, District Judge Knight, U. S. District W. D. (1939), denied a motion to require the production of income tax returns on the basis that: "The books and records required to be produced should sufficiently show the income of these parties insofar as it is relevant to the issues".

In O'Connell v. Olsen, 10 F.R.D. 142, the last authority cited in the United Motion Theatre Company case, supra, Chief Judge 'Jones held in a personal injury case that Federal income tax returns are confidential communications and refused to direct their production for inspection by opposing counsel.

In the case of U. S. v. O'Mara, 122 F. Supp. 399, 400, U.S.D.C. District of Columbia (1954), also cited by defendant, District Judge Holtzoff held that the privilege accorded income tax returns filed with the Commissioner of Internal Revenue did not extend to taxpayer's own copies of such returns, and that the taxpayer's failure to comply with congressional investigating subcommittee's subpoena duces tecum for such copies constituted contempt of Congress.

Defendant also cites the cases of Peterson v. Peterson, 17 N. W. 2d 920 (South Dakota), and Ross v. Keilson Cigar Co., 69 N. E. 2d 203 (Ohio C. P.), in support of his position.

The foregoing appears to be a complete list of all cases supporting the position of defendant.

From an examination of the Internal Revenue Code and the cases on the subject, we conclude that the income tax returns of John A. McGuire, defendant, should be made available for inspection by plaintiffs and their attorneys insofar as they are relevant.

The income tax returns of defendant contain, we have no doubt, a great deal of information that is not pertinent to the case before us, and also personal information that not only is not pertinent but should not be disclosed. We shall, therefore, direct that the copies of the income tax returns shall be produced by defendant and should be made available for inspection by this court in camera to determine which information therein contained is material. We shall then make such information as is material and proper available for inspection by all counsel for plaintiffs: United States v. Ward, 120 F. Supp. 57, U. S. Dist. Ct. S.D. New York (1954).